**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**

| | | |
|---|---|---|
| ASSOCIATION OF AMERICAN PHYSICIANS AND SURGEONS EDUCATIONAL FOUNDATION, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No. 3:22-cv-240 |
| AMERICAN BOARD OF INTERNAL MEDICINE, AMERICAN BOARD OF OBSTETRICS & GYNECOLOGY, AMERICAN BOARD OF FAMILY MEDICINE, and ALEJANDRO MAYORKAS, in his official capacity as the Secretary of the U.S. Department of Homeland Security, | ) ) ) ) ) ) ) ) | |
| Defendants. | ) | |

## COMPLAINT

Plaintiff Association of American Physicians and Surgeons Educational Foundation ("AAPS" or "AAPS Educational Foundation") seeks declaratory and injunctive relief against Defendants American Board of Internal Medicine ("ABIM"), American Board of Obstetrics & Gynecology ("ABOG"), American Board of Family Medicine ("ABFM"), and Alejandro Mayorkas ("Mayorkas"), in his official capacity as the Secretary of the U.S. Department of Homeland Security ("DHS"), based on the following allegations.

### NATURE OF THE ACTION

1.      This action is brought by a co-sponsor of medical conferences and publisher of educational materials on the internet, Plaintiff AAPS, against Defendants concerning their unprecedented campaigns to censor speech that they falsely disparage as "misinformation" or "disinformation".  Defendants wrongly misuse their authority in a politically partisan manner to chill speech critical of positions taken by Dr. Anthony Fauci, lockdowns, mask mandates, Covid vaccines and even abortion.  Defendants have acted in an apparently coordinated manner, using

1

similar timing and terminology, to censor those who exercise their First Amendment rights on issues of public concern.

2.      ABIM, ABOG and ABFM (the "Board Defendants") have certification monopolies in their respective specialties, which are based primarily on written multiple-choice medical examinations.  Though ostensibly nonprofit and non-partisan, they are outspokenly allied with the Biden Administration on fundamental issues of abortion, surgical and pharmacological transgender interventions, lockdowns, mask and vaccine mandates.  For example, on June 24, 2022, Defendant ABIM issued a statement that the Supreme Court decision in *Dobbs v. Jackson Women's Health Organization* "will cause health care to deteriorate in the US for many years to come."[1] ABIM joined a statement by the AMA that "condemns" this Supreme Court decision as "egregious",[2] similar to the position against the Court decision taken on that same day by the Biden Administration.  ABIM also displayed its agreement with the subsequent Biden Administration in ABIM's criticism of President Trump's proposed rules in 2020 to protect the right of conscience of physicians to decline to provide "transgender" interventions.[3]

3.      The Board Defendants have announced their campaign to take action against certifications earned by physicians who make public statements with which the Board Defendants disagree.  Defendants ABIM and ABFM have already sent letters to physicians threatening them with revocation of their earned board certifications based on the exercise by those physicians of

---

[1]  https://blog.abim.org/abim-supports-reproductive-health-and-access-to-care/ (viewed July 12, 2022).

[2]  https://www.ama-assn.org/press-center/press-releases/ruling-egregious-allowance-government-intrusion-medicine (viewed June 26, 2022).

[3]  https://blog.abim.org/reaffirming-community-values-transgender-rights-in-health-care-matter/ (viewed June 28, 2022).

their First Amendment rights on matters of public policy. Defendant ABOG has publicly warned physicians against making statements against abortion and contraception, lest they have their earned board certifications revoked by ABOG if it disagrees with such statements.

4. This partisan retaliation by the Board Defendants has been based in part on statements by physicians warning pregnant woman against receiving the Covid vaccine, even though the World Health Organization issued a similar warning in 2021. Retaliation has occurred by the Board Defendants against physicians who were praised by Robert F. Kennedy, Jr., in his bestselling book, *The Real Anthony Fauci*. In some cases, the retaliation is based expressly on criticism by physicians of Dr. Fauci, who as a government official may be freely criticized.

5. Though repeatedly proven wrong or having contradicted himself, Dr. Fauci declared on the nationally televised *Face the Nation* that "I represent science" and that his critics "are really criticizing science."[4] Republican Senators, including Dr. Rand Paul (R-KY) and Ted Cruz (R-TX), sharply rebuked Dr. Fauci for his statements and yet the Board Defendants seek to revoke earned board certifications from physicians in part for criticizing Dr. Fauci.

6. On or about May 26, 2022, ABIM abused its monopoly power by sending unprecedented threatening letters to multiple prominent ABIM-certified physicians, including one practicing in Texas, for making public statements that disagree with the approach taken by Dr. Fauci and the Biden Administration to Covid-19. Likewise, and apparently in a coordinated manner, the American Board of Family Medicine (ABFM) abused its monopoly power by sending threatening letters this year to multiple prominent ABFM-certified physicians, for making statements critical of positions promoted by the Biden Administration concerning Covid-19.

---

[4] https://www.cbsnews.com/news/transcript-dr-anthony-fauci-on-face-the-nation-november-28-2021/ (transcript of Nov. 28, 2021, viewed July 9, 2022).

These threatening letters by ABIM and ABFM did not explain any specific inaccuracy about anything said by these physicians, or provide any evidence of any falsehood, but instead generally objected to criticisms by these physicians of positions concerning Covid-19 that are in the public debate.

7.      Defendant ABOG, in a public announcement dated July 7, 2022, threatened physicians who make public statements against abortion or contraception, indicating that "[e]ligibility to gain or maintain ABOG certification may be lost." [5]  ABOG is stridently supportive of universal access to abortion and taxpayer funding of it, and ABOG sharply criticized the recent Supreme Court decision in *Dobbs*.

8.      Although only official state medical boards have the proper authority to regulate the practice of medicine, certifications by the Board Defendants constitute a *de facto* essential credential for practicing in most hospitals and participating in most networks.  By threatening to revoke board certification of physicians, the Board Defendants improperly chill speech by physicians without the political accountability of official state medical boards.

9.       Defendant Mayorkas, in his capacity as a Cabinet official in the Biden Administration, has created the Orwellian Disinformation Governance Board ("DGB") in order to censor disfavored information based on its content.

10.      The creation of the DGB and the Board Defendants' threatening letters to physicians came within months of President Joe Biden issuing the following directive:

> I make a special appeal to social media companies and media outlets: Please deal with the misinformation and disinformation that's on your shows. ***It has to stop***.[6]

---

[5]       https://www.abog.org/about-abog/news-announcements/2022/07/07/statement-regarding-misinformation-and-disinformation-and-medical-professionalism (viewed July 9, 2022).

[6] Remarks by President Biden at Virtual Meeting on Military Deployments Supporting Hospitals for the COVID-19 Response, The White House (January 13, 2022, emphasis added), https://tinyurl.com/45ezsejt (viewed May 11, 2022).

11.     Likewise, about six months earlier the Biden Administration declared at a press briefing hosted by Press Secretary Jen Psaki and Surgeon General Dr. Vivek H. Murthy that:

> [W]e are in regular touch with these social media platforms, and those engagements typically happen through members of our senior staff ….[7]

12.     Twenty (20) State Attorneys General, led by the Virginia Attorney General and joined by the Texas Attorney General, signed and publicly released a letter addressed to Defendant Mayorkas, dated May 5, 2022, which protested the unconstitutionality of the Disinformation Governance Board.  These State Attorneys General agreed that:

> ***The existence of the Disinformation Governance Board will inevitably have a chilling effect on free speech***. Americans will hesitate before they voice their constitutionally protected opinions, knowing that the government's censors may be watching, and some will decide it is safer to keep their opinions to themselves. The resulting damage to our political system and our culture will be incalculable: as a democracy, our political debates and decisions are supposed to take place in the public square, where every citizen can participate, rather than in government office buildings where hand-picked and unaccountable partisan committees are insulated from public supervision and criticism. …
>
> [The DGB] is therefore ***already*** chilling free speech and impeding the political process in Virginia and every other State.[8]

Their strong letter repeated what "Justice Brandeis explained long ago, 'the remedy to be applied is more speech, not enforced silence.'"  *Whitney v. California*, 274 U.S. 357, 377 (1927) (Brandeis, J., concurring)."[9]

13.     DHS announced in its press release dated May 2, 2022, that it directed that the "Homeland Security Advisory Council ('HSAC') make recommendations for how the Department

---

[7] Press Briefing by Press Secretary Jen Psaki and Surgeon General Dr. Vivek H. Murthy, July 15, 2021, The White House (July 15, 2021), https://tinyurl.com/bdsc4jhh (viewed May 12, 2022).

[8]  https://www.oag.state.va.us/files/MIYARES2022/DGBLetter_Final.pdf  (pp. 2, 4, emphasis added in first sentence, emphasis in original in last sentence, viewed June 11, 2022).

[9] *Id.* (p. 3).

can most effectively and appropriately address disinformation that poses a threat to the homeland, while protecting free speech and other fundamental rights."[10]  HSAC is a committee subject to the requirements of the Federal Advisory Committee Act ("FACA").

14.     Amid a public backlash, on May 18, 2022, it was widely reported that DHS "paused" its Disinformation Governance Board, that its first Executive Director has resigned,[11] and that recommendations were expected from HSAC within 75 days concerning how the DGB should proceed further.[12]   Yet the Homeland Security Advisory Council is acting in ongoing violations of Federal Advisory Committee Act with respect to the Disinformation Governance Board.

15.     While DGB was reportedly "paused", its agenda of retaliating against speech disfavored by the Biden Administration continues to be imposed by the Board Defendants, which chills First Amendment rights, constitutes monopoly abuse, and tortiously interferes with Plaintiff's activities.

16.     Polling shows that many people agree with physicians who criticize government approaches to Covid-19.  The non-partisan, widely cited "fivethirtyeight.com" website shows that 43.2% of Americans disapproved of Biden's handling of Covid-19 as of June 22, 2022.[13]

17.     Defendants' actions harm the conferences and fundraising efforts by AAPS, which

---

[10]     https://www.dhs.gov/news/2022/05/02/fact-sheet-dhs-internal-working-group-protects-free-speech-other-fundamental-rights (viewed May 21, 2022).

[11]   https://www.axios.com/2022/05/18/dhs-disinformation-board-resign-nina-jankowicz (viewed May 22, 2022).

[12]     https://www.al.com/news/2022/05/disinformation-governance-board-the-so-called-ministry-of-truth-paused-as-nina-jankowicz-resigns.html (viewed May 21, 2022).

[13] https://projects.fivethirtyeight.com/coronavirus-polls/ (viewed June 24, 2022).

depend on robust freedom of speech in-person and on the internet.  Presenters at conferences co-sponsored by Plaintiff have received letters threatening revocation of their earned board certifications, for statements they made at AAPS co-sponsored conferences.

## PARTIES

18.     Founded in 1996, Plaintiff AAPS Educational Foundation ("AAPS") is a non-profit organization incorporated under the laws of Arizona and headquartered in Tucson, Arizona.  AAPS co-sponsors medical education conferences, including subsidizing attendance by medical students and residents at such conferences.  AAPS posts videos on the internet of presentations made by physicians and others at its conferences.  AAPS raises money based on these activities.

19.     Defendant American Board of Internal Medicine ("ABIM") is a nonprofit organization based in Philadelphia, Pennsylvania, which certifies physicians nationwide in the specialty of internal medicine, primarily on the basis of performance on a written multiple-choice examination.  ABIM does business in Texas and in the Galveston area by certifying physicians here.

20.     Defendant American Board of Obstetrics & Gynecology ("ABOG") is a nonprofit organization having its principal place of business in Dallas, Texas.  ABOG certifies physicians nationwide in the specialty of obstetrics and gynecology, also primarily on the basis of performance on a written multiple-choice examination.  ABOG does business in the Galveston area by certifying physicians here.

21.     Defendant American Board of Family Medicine ("ABFM") is a nonprofit organization based in Lexington, Kentucky, which certifies physicians nationwide in the specialty of family medicine, on the basis primarily of performance on a written multiple-choice examination.  ABFM also does business in Texas and in the Galveston area by certifying

physicians here.

22.     Defendant Alejandro Mayorkas is the Secretary of the U.S. Department of Homeland Security.

## JURISDICTION AND VENUE

23.     This action arises out of federal law: Defendants' ongoing violations of the First Amendment of the U.S. Constitution, the Board Defendants' violation of the Sherman Act, 15 U.S.C. § 2, and Defendant Mayorkas's violation of the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 702, 706.  This action thereby raises federal questions over which this Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1361.  This Court also has jurisdiction over the Sherman Act claim under 28 U.S.C. § 1337 and 15 U.S.C. §§ 15, 26.  Supplemental jurisdiction over the claim for tortious interference exists under 28 U.S.C. § 1367.

24.     Venue is proper in this United States District Court for the Southern District of Texas, Galveston Division, under 28 U.S.C. § 1391(d) & (e)(1).  Defendant ABOG is a resident of Texas that does business in this venue, and is subject to personal jurisdiction here.  Defendants ABIM and ABFM do business within this venue also, and upon information and belief Defendant Mayorkas, through DHS, employs agents here.  Defendant ABIM has expressly threatened at least one prominent Texas physician with revocation of certification based on his public exercise of his freedom of speech.  Plaintiff co-sponsors events in Texas and within the Southern District of Texas, and plans to hold an event within this Galveston division, but Defendants interfere with and chill freedom of speech in interference with these conferences by Plaintiff.

## Ongoing Injuries to Plaintiff

25.     Defendants are causing a direct monetary harm to Plaintiff AAPS in the form of a chilling effect on speakers at its conferences, a corresponding decrease in attendance at those events, lost internet traffic with respect to a reduction in videos posted from those conferences,

and a resultant corresponding decline in conference fees and donations to Plaintiff.

26.     The Board Defendants engage in tortious conduct by misusing their monopoly power over board certification, which is based primarily on performance on written multiple-choice examinations, in order to chill and interfere with the presentation of alternative viewpoints at medical conferences and on the internet, including interference with those activities by Plaintiff AAPS.

27.     By establishing the Disinformation Governance Board, Defendant Mayorkas chills and infringes on AAPS's First Amendment right of freedom of speech, and causes immediate and redressable First Amendment injuries to AAPS.

28.     Defendant Mayorkas further causes ongoing harm to AAPS by failing to comply with the Federal Advisory Committee Act ("FACA"), which constitutes a violation of APA.

### Irreparable Harm and Inadequacy of Alternate Remedies

29.     Plaintiff AAPS has First Amendment injuries to its rights of freedom of speech, for which the "loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373 (1976).  Accordingly, Plaintiff AAPS has suffered – and continues to suffer – irreparable harm.

30.     Similarly, the violations by Defendant Mayorkas of the APA cause ongoing and irreparable harm to Plaintiff AAPS, because Defendant Mayorkas's final agency actions without compliance with FACA cannot be adequately remedied.  AAPS suffers injury because Defendant Mayorkas's final agency actions result in an infringement on AAPS's rights to have administrative compliance by federal agencies with the mandates of FACA, through application of the APA.

31.     Because this Court has jurisdiction as a threshold matter, the Declaratory Judgment Act, 28 U.S.C. §§ 2201-02, provides this Court with the power to "declare the rights and other legal relations of any interested party…, whether or not further relief is or could be sought."  28

U.S.C. § 2201; *accord* FED. R. CIV. P. 57 advisory committee note ("the fact that another remedy would be equally effective affords no ground for declining declaratory relief").

## FACTUAL BACKGROUND

### The Board Defendants

32.     The Board Defendants are testing businesses that certify physicians in certain specialties based primarily on their performance on written multiple-choice examinations.  The Board Defendants have no meaningful academic affiliations, and no demonstrable expertise in anything related to Covid-19, its treatment, vaccination of pregnant women, mask mandates, lockdowns, or harm caused by abortion.  For example, ABIM's longtime president and CEO, Richard J. Baron, MD, has a background in medical administrative jobs and implementing electronic medical records, and lists no research, teaching, scholarship, or ongoing academic affiliations on his biography on his website.[14]  He includes in his own posted biography that he is a member of the politically oriented Aspen Institute Health Strategy Group, along with CEOs of businesses that have substantial financial interests in approaches to the Covid pandemic.[15]

33.     Defendants ABIM and ABOG engage in a pattern of advocating for positions taken by the Biden Administration on multiple social issues, including abortion.  On the very same day that the Biden Administration made statements criticizing the Supreme Court decision that overturned *Roe v. Wade*, ABIM made intemperate and unjustified public statements quoted above against that Court, accusing it of inflicting harm on health care in the United States "for many

---

[14]   https://abimfoundation.org/person/richard-j-baron-md-president-and-ceo  (viewed  June  24, 2022).

[15]   https://www.aspeninstitute.org/news/press-release/health-strategy-group-improving-end-life-care/ (viewed June 24, 2022).

years to come." ABIM is not even the specialty board for obstetrics, and has no legal expertise on constitutional issues.

34.     On behalf of ABIM, and posting as its President and CEO, Dr. Baron wrongly defamed those who disagree with his approach to Covid-19 as being "friends of the virus." *A Message From Dr. Richard Baron About COVID-19 Misinformation*.[16]

35.     Dr. Baron also falsely stated that "COVID prevention" is the purpose of Covid vaccination, and that physicians "must" agree with this falsehood:

> [T]he community of physicians that composes ABIM ***must feel obliged*** to recommend vaccination as a first-line strategy for COVID ***prevention***.[17]

36.     To the contrary, the CDC itself has admitted that Covid vaccination does not prevent transmission of Covid.[18] Many high-profile officials, including Dr. Anthony Fauci himself, have reportedly contracted Covid-19 despite being multiply vaccinated with multiple booster shots, along with wearing masks.

37.     In its own Policies & Procedures, ABIM states that its primary grounds for revoking its board certification is if a physician's license to practice medicine has been restricted, suspended, or revoked, or if he has engaged in "misconduct in connection with an ABIM examination." *ABIM Policies & Procedures* p. 18. ABIM does not claim any authority in its *Policies & Procedures* to discipline physicians based on disagreement with their public statements on matters of public policy, and yet is attempting to do that anyway.

---

[16]     https://blog.abim.org/a-message-from-dr-richard-baron-about-covid-19-misinformation/ (emphasis added, viewed June 24, 2022).

[17] *Id.* (emphasis added).

[18]     https://www.msn.com/en-us/health/medical/cdc-director-covid-vaccines-cant-prevent-transmission-anymore/ar-AASDndg (viewed June 24, 2022).

38.     Similar to the unprecedented conduct by the ABIM alleged herein, Defendant ABFM has sent out threatening letters to physicians based not on their treatment of patients or their performance on ABFM's written multiple-choice examinations, but based on the physicians' public statements about matters of public policy.

39.     On July 7, 2022, Defendant ABOG announced that it might revoke board certifications of physicians opposed to abortion if they provide "false or misleading information" that is "used to advocate for legislation, regulations, criminal code, and health policy."[19]   This infringes on the constitutional rights of physicians to participate in the processes of legislation and public policy decision-making, as what ABOG considers to be "false or misleading" is almost any statement against abortion.  ABOG denies harm caused by abortion, even harm reported in peer-reviewed published medical studies.  ABOG is deliberating chilling free speech on this issue by physicians, and harming Plaintiff by interfering with presentations at its conferences.

40.     The Board Defendants' conduct appears to be coordinated, in a concerted attempt to advance a partisan political agenda.  Upon information and belief, Board Defendants are aware of the partisan positions taken by officials in the Biden Administration on the relevant issues, and Board Defendants are responding to pressure or requests by the Biden Administration or Democrats in Congress to censor the expression of independent viewpoints by physicians.

**Disinformation Governance Board**

41.     Amid demands for censorship by the political party currently in power, Defendant Mayorkas publicly disclosed for the first time in testimony to Congress on April 27, 2022, that DHS has established a new Disinformation Governance Board ("DGB").

---

[19]     https://www.abog.org/about-abog/news-announcements/2022/07/07/statement-regarding-misinformation-and-disinformation-and-medical-professionalism (viewed July 9, 2022)

42.     The mere existence of DGB has the effect of chilling speech by Plaintiff AAPS, particularly in its conferences and on the internet.  This interferes with the ability of AAPS to attract speakers and attendees, and to obtain donations from supporters who view presentations posted on the internet from AAPS's conferences.

43.     It was also disclosed on April 27 that Nina Jankowicz was appointed as the first Executive Director of the Disinformation Governance Board.  She subsequently tweeted publicly as follows:

> ***Cat's out of the bag***: here's what I've been up to the past two months, and why I've been a bit quiet on here [on Twitter].
>
> Honored to be serving in the Biden Administration@DHSgov ***and helping shape our counter-disinformation efforts***.[20]

44.     Although the timeline is not yet confirmed, it appears that, while serving on the Disinformation Governance Board, its then-Executive Director Ms. Jankowicz tweeted as follows on April 25, 2022:

> Last week I told @NPRMichel:  I shudder to think about if free speech absolutists were taking over more platforms, what that would look like for the marginalized communities…which are already shouldering…disproportionate amounts of this abuse.[21]

This indicates a not-fully-disclosed partisan agenda to censor some content, on the internet including social media platforms, while favoring other speech.

45.     Likewise, on May 7, 2022, during a Commencement address at the University of Michigan, Dr. Anthony Fauci, as the director of the National Institute of Allergy and Infectious Diseases and a top adviser to President Biden, told graduates:

> If you remember nothing else from what I say today, I truly appeal to you, please remember this: It is our collective responsibility not to sink to a tacit acceptance of the normalization

---

[20] https://twitter.com/wiczipedia/status/1519274470049042432 (emphasis added, viewed May 1, 2022).

[21] https://twitter.com/wiczipedia/status/1518643449225953287 (viewed May 1, 2022).

of untruths, because if we do, we bring danger to ourselves, our families and our
communities.

and:

This is how a society devolves into a way of life where veracity becomes subservient to
propaganda rather than upheld as a guiding principle for creating and sustaining a just
social order.[22]

While not fully explained by Dr. Fauci, his foregoing argument as a longtime government official

against "a tacit acceptance of the normalization of untruths" appears to call implicitly for

censorship of speech based on content that one political party disfavors.

46.    A common attribute of physician targets of the threatening letters sent to them by

Defendants ABIM and ABFM is that the targeted physicians have criticized positions promoted

by Dr. Fauci as a public official, and/or were identified for praise in Robert F. Kennedy, Jr.'s book

*The Real Anthony Fauci*.  In effect, ABIM and ABFM are retaliating against outspoken physicians

for daring to criticize a government employee who occupies a powerful position over government

policy, and who shares common partisan political beliefs with executives at the Board Defendants.

47.    In purpose and effect, the Disinformation Governance Board has a chilling effect

on free speech on the internet, by advancing a partisan agenda of censorship and by acting as a

sort of "Ministry of Truth" disparagingly described in George Orwell's dystopian novel, *1984*.

48.    Criticism of DGB has been intense from both sides of the political spectrum,

although misreported as being primarily from the political right.  Both Elon Musk and Jeff Bezos

appeared to criticize the DGB, as have liberal politicians.  For example, Jeff Bezos, who owns the

liberal-leaning *Washington Post*, sarcastically tweeted against the DGB as follows:

The newly created Disinformation Board should review this tweet [by Biden], or maybe
they need to form a new Non Sequitur Board instead. Raising corp taxes is fine to discuss.

---

[22]https://record.umich.edu/articles/fauci-to-comeback-grads-fight-normalization-of-untruths/
(viewed May 10, 2022).

Taming inflation is critical to discuss. Mushing them together is just misdirection.[23]

## Homeland Security Advisory Council

49.     The Homeland Security Advisory Council ("HSAC") is a FACA committee within

DHS.

50.     HSAC is governed by its charter, and currently has about 36 members.

51.     The members of HSAC serve as Special Government Employees, a term defined in

18 U.S.C. § 202(a), and are employed entirely or nearly entirely in the private sector including

nonprofit organizations.

52.     The charter governing HSAC was approved by DHS on March 8 and filed with

Congress on March 11, 2021.

53.     This HSAC charter requires that its "membership shall be drawn from the following

fields:

> Police, fire, emergency medical services, and public works;
> Public health;
> State, local, and tribal officials;
> National policy makers;
> Experts in academia and the research community; and
> Leaders from the private sector including, but not limited to, owners and operators of
> critical industries, resources, and infrastructure."[24]

54.     Accordingly, none of the members of HSAC is required by its charter to have any

experience with First Amendment freedom of speech issues, social media, censorship on the

---

[23]
https://twitter.com/JeffBezos/status/1525309091970699265?ref_src=twsrc%5Etfw%7Ctwcamp
%5Etweetembed%7Ctwterm%5E1525309091970699265%7Ctwgr%5E%7Ctwcon%5Es1_&ref_
url=https%3A%2F%2Fwww.businessinsider.com%2Fjeff-bezos-amazon-president-joe-biden-
inflation-twitter-feud-timeline-2022-5 (viewed May 22, 2022).

[24]   https://www.dhs.gov/sites/default/files/publications/hsac_charter_renewal_508.pdf   (viewed
May 21, 2022).

internet, or addressing public "disinformation" however defined.

55.     Nothing in the charter of HSAC authorizes it to address First Amendment issues concerning freedom of speech, or censorship on the internet.  The charter of HSAC limits it as an advisory body to providing only "organizationally independent, strategic, timely, specific and actionable advice to the Secretary and senior leadership on matters related to homeland security." (HSAC Charter § 3)[25]

56.     The purpose of HSAC is plainly stated in its charter and primarily relates to "terrorist attacks, major disasters, or other emergencies" (*id.* § 3(A)), a phrase that the HSAC Charter repeats multiple times.  (*Id.* § 3(A), (C), (D)).  The HSAC charter expressly and fully defines the purpose of HSAC as follows:

Objectives and Scope of Activities:

HSAC shall provide organizationally independent, strategic, timely, specific and actionable advice to the Secretary and senior leadership on matters related to homeland security. HSAC serves strictly as an advisory body with the purpose of providing advice upon the request of the Secretary. HSAC advice to the Secretary may encompass:

A. Strategy and Policy: Recommendations for the development of strategies and policies that will further the Department's ability to prevent, protect against, respond to, and recover from terrorist attacks, major disasters, or other emergencies.

B. Leadership and Coordination: Recommendations for improving the Department's leadership and coordination, internally across the Department, externally across the Federal Government, and among state, local, tribal governments, first responders, the private and non-profit sectors, academia, and research communities.

C. Management and Implementation: Recommendations for the development and implementation of specific programs or initiatives to prevent, protect against, respond to, and recover from terrorist attacks, major disasters, or other emergencies.

D. Evaluation and Feedback: Recommendations for the efficiency and effectiveness of Department of Homeland Security (DHS) programs to prevent, protect against, respond to,

---

[25] https://www.dhs.gov/publication/homeland-security-advisory-council-charter (viewed May 22, 2022).

and recover from terrorist attacks, major disasters, or other emergencies.[26]

**Plaintiff AAPS**

57.     AAPS co-sponsors conferences, including conferences in Texas, and posts videos on the internet about issues in public controversy.  The topics include Covid-19, abortion, and positions taken by the Biden Administration.

58.     Defendants' retaliation against speakers at AAPS conferences injures AAPS and chills its First Amendment freedom of speech rights, which broadly include the right to listen.

59.     Such censoring and disfavoring of its freedom of speech adversely affects AAPS and causes it a loss in financial support, in the form of decreased attendance at its conferences and reduced contributions to it.

60.     The establishment of the Disinformation Governance Board within the powerful federal agency DHS has a chilling effect on internet speech disfavored by the Democratic Party, President Biden, and executives at the Board Defendants.

61.     It is not yet fully known what actions have been taken or are planned by the DGB, but upon information and belief it is expected that the DGB has or will contact the Board Defendants and/or others in seeking limits on what may be said on the internet.

**Partisan Initial Executive Director of the Disinformation Governance Board**

62.     Nina Jankowicz, who was appointed as the first Executive Director of the Disinformation Governance Board, has apparently expressed highly partisan views.

63.     For example, Executive Director Jankowicz has publicly characterized parents of schoolchildren in the Loudoun County, Virginia school district as "disinformers", because the parents objected to instructing their children with Critical Race Theory.

---

[26] *Id.*

64.     Executive Director Jankowicz has been outspokenly critical of Donald Trump.   For example, in recent years she spoke disparagingly against information concerning the possible laboratory origin of Covid as "politically convenient for Trump."[27]   Yet this supposed misinformation was officially accepted as a possibility by the World Health Organization in June 2022,[28] and reportedly both the *Lancet* Commission Chief and the Chairman of the World Health Organization now consider it likely that the virus had a lab origin.[29]

65.     Jankowicz reportedly resigned as Executive Director of DGB in May 2022, but records of activities of the DGB during her tenure, and any communications that the HSAC has had with her, have not been released to the public.

**Lack of Authorization**

66.     There is no statutory authority for the DGB.   Congress has considered but never enacted legislation to authorize such a governmental board.[30]

67.     Defendant Mayorkas has thereby acted without congressional authorization, which renders the DGB an *ultra vires*, unconstitutional abuse of power by the Executive Branch.

68.     Defendant Mayorkas also violates the separation of powers and overreaches beyond the constitutional limits on his proper authority.

---

[27]   https://www.msn.com/en-us/news/world/biden-disinformation-chief-s-criticisms-of-lab-leak-theory-were-boosted-by-ccp/ar-AAWL30p (viewed May 25, 2022).

[28]   https://www.msn.com/en-in/news/world/covid-origin-who-refuses-to-rule-out-china-lab-leak-theory-without-evidence/ar-AAYukaZ (viewed June 26, 2022).

[29]   https://yournews.com/2022/06/21/2364017/who-and-lancet-commission-chiefs-come-out-in-support-of/ (viewed June 26, 2022).

[30] Examples of proposed legislation on this issue that that were never enacted include the COVID-19 Disinformation Research and Reporting Act of 2021, S. 913, 117th Cong. (2021), and A Bill To Amend the Communications Act of 1934, S. 2448, 117th Cong. (2021).

**The Disinformation Governance Board and FACA**

69.     Upon information and belief, the Disinformation Governance Board is itself subject to the Federal Advisory Committee Act ("FACA").

70.     The DGB provides advice to a federal agency, the U.S. Department of Homeland Security. *See Elec. Privacy Info. Ctr. v. Drone Advisory Comm.*, 452 U.S. App. D.C. 106, 109, 995 F.3d 993, 996 (2021) ("FACA defines the term 'advisory committee' to cover 'any committee, board, commission, council, conference, panel, task force, or other similar group, or any subcommittee or other subgroup thereof' that is 'established or utilized by' the President or a federal agency 'in the interest of obtaining advice or recommendations for' the President or the agency.") (quoting 5 U.S.C. app. 2, § 3(2)).

71.     According to the Fact Sheet posted by DHS on its own website, "the Disinformation Governance Board is an internal working group that … seeks to coordinate the Department's engagements on this subject with other federal *agencies and a diverse range of external stakeholders*."[31]   Accordingly, DGB is not exempt from FACA based on being comprised exclusively of federal employees, as DGB evidently works with many diverse non-governmental employees.

72.     An official, publicly released letter dated June 7, 2022 by Senators Charles Grassley (R-IA) and Josh Hawley (R-MO) to Defendant Mayorkas (hereinafter, "Senators' Letter") explains facts indicative of a FACA violation.[32]

73.     Specifically, Senators Grassley and Hawley stated in their foregoing letter to

---

[31]   https://www.dhs.gov/news/2022/05/02/fact-sheet-dhs-internal-working-group-protects-free-speech-other-fundamental-rights (emphasis added, viewed May 20, 2022).
[32]
https://www.grassley.senate.gov/imo/media/doc/grassley_hawley_to_deptofhomelandsecuritydis informationgovernanceboard.pdf (viewed June 10, 2022).

Defendant Mayorkas that:

> Documents show that, contrary to [Mayorkas's] May 4, 2022, testimony before the Senate Committee on Homeland Security and Governmental Affairs, the DGB was established to serve as much more than a simple "working group" to "develop guidelines, standards, [and] guardrails" for protecting civil rights and civil liberties.  In fact, DHS documents show that the DGB was designed to be the Department's central hub, clearinghouse and gatekeeper for [Biden] Administration policy and response to whatever it happened to decide was "disinformation." …

> Documents also suggest that the Department has been working on plans to "operationalize" its relationships with private social media companies to implement its public policy goals.  For example, we obtained draft briefing notes prepared for a scheduled April 28, 2022, meeting … [and t]he briefing notes frame the planned meeting … [with] the Twitter executives as "an opportunity to discuss operationalizing public-private partnerships between DHS and Twitter, as well as [to] inform Twitter executives about DHS work on MDM, including the creation of the Disinformation Governance Board and its analytic exchange..."

Senators' Letter at 1, 3 (citations omitted).

## COUNT I
## VIOLATION BY DEFENDANTS OF FIRST AMENDMENT FREEDOM OF SPEECH

74.     Plaintiff incorporates all other paragraphs in this Complaint as if fully set forth herein.

75.     Defendant Mayorkas's creation of a Disinformation Governance Board has a chilling effect on internet speech and medical conference presentations, as DGB's mere existence encourages or induces the Board Defendants and others to retaliate against speakers based on the content of their speech on matters of public policy.

76.     There is little or no transparency in the communications and actions by the DGB, and Board Defendants and others will censor more speech than may even be expressly sought by the DGB.

77.     The chilling effect caused by Defendant Mayorkas's actions is unconstitutional under the First Amendment of the U.S. Constitution, and causes injury to AAPS in the form of a

decrease in attendance at its conferences and in donations to it.

78.     The Board Defendants have lobbied for and sometimes obtained government endorsement of their certifications at the federal level.  The Board Defendants have also sought and sometimes obtained, at the state level, government restrictions on physicians against referring to themselves as "board certified" unless certified by the Board Defendants.  The Board Defendants work with Biden Administration officials now and seek to advance its agenda on issues relevant to this case.

79.     The Board Defendants impose their censorship as alleged herein either at the request of officials in the Biden Administration and Democrats in Congress, or in the expectation of obtaining favoritism from them as a result.

80.     The nearly simultaneous public announcements and sending of threatening letters by the Board Defendants, often using similar terminology, is part of a broader campaign by the Biden Administration to advance its particular partisan agenda concerning Covid-19 and abortion.

81.     Many hospitals and insurance networks require certification by the Board Defendants, and thus their revocation of board certification can have a devastating effect on the practice of medicine by a physician, in some cases being tantamount to revoking his license to practice medicine.

82.     Defendants' foregoing conduct has a chilling effect on speech, and thereby infringes on the First Amendment's protection of freedom of speech by Plaintiff AAPS.

## COUNT II
## VIOLATION BY DEFENDANT MAYORKAS OF THE ADMINISTRATIVE PROCEDURE ACT

83.     Plaintiff incorporates all other paragraphs in this Complaint as if fully set forth herein.

84.     Defendant Mayorkas's creation of the DGB and his order to the HSAC to provide a recommendation to him concerning the activities of the DGB constituted final agency actions within the meaning of the Administrative Procedure Act (APA).

85.     It is beyond the charter and expertise of HSAC to give a recommendation about the governance of alleged disinformation on the internet and elsewhere.

86.     Defendant Mayorkas is the agency head responsible for appointing members to HSAC.

87.     FACA requires that Defendant Mayorkas ensure that the membership of the HSAC is "fairly balanced in terms of the points of view represented and the functions to be performed by the advisory committee." 5 U.S.C. app. 2 § 5(b)(2).

88.     HSAC is not fairly balanced with respect to First Amendment issues of free speech.

89.     Not a single member of HSAC purportedly even represents the media, physicians' organizations, religious institutions, free speech advocacy entities, or patient groups.

90.     FACA requires that Defendant Mayorkas, as the head of the agency to which the HSAC reports, "designate a Federal officer ... to be the [Designated Federal Officer]" for the HSAC. 41 C.F.R. § 102-3.120.

91.     Upon information and belief, Defendant Mayorkas has not appointed a Designated Federal Officer for HSAC.

92.     FACA further requires that "the records, reports, transcripts, minutes, appendixes, working papers, drafts, studies, agenda, or other documents which were made available to or prepared for or by each advisory committee shall be available for public inspection and copying at a single location in the offices of the advisory committee or the agency to which the advisory committee reports until the advisory committee ceases to exist." 5 U.S.C. app. 2 § 10(b).

93.     Defendant Mayorkas has failed to make any such documents of HSAC available concerning its communications and activities with respect to the DGB.

94.     The above-quoted letter by Senators Grassley and Hawley set forth facts that indicate further violations of FACA by Defendant Mayorkas.  For example, Defendant Mayorkas's plan "to 'operationalize' [DHS's] relationships with private social media companies to implement its public policy goals," Senators' Letter at 3, violates FACA by failing to be transparent.

95.     The foregoing conduct by Defendant Mayorkas constitutes final agency actions under the APA, 5 U.S.C. § 706.

96.     This conduct by Defendant Mayorkas is in violation of FACA, and is thereby arbitrary, capricious, an abuse of discretion, and contrary to law, in violation of the APA, 5 U.S.C. § 706(2)(A), (B) and (D).

97.     Defendant Mayorkas's foregoing violations of the APA and FACA have injured AAPS by denying its rights to have its interests represented on HSAC while it acts under the command of Defendant Mayorkas to make recommendations about the DGB.

98.     These injuries to Plaintiff are likely to persist as long as Defendant Mayorkas is allowed to continue to direct the operation of HSAC in violation of FACA.

## COUNT III
## THE BOARD DEFENDANTS' TORTIOUS INTERFERENCE WITH BUSINESS RELATIONS

99.     Plaintiff incorporates all other paragraphs in this Complaint as if fully set forth herein.

100.    The Board Defendants are tortiously interfering with Plaintiff's medical conferences and donations to Plaintiff.

101.    Specifically, there is a reasonable probability that Plaintiff would have entered into

a business relationship with third parties, namely conference attendees and donors.

102.    The Board Defendants know that interference with both presentations by physicians at these conferences co-sponsored by Plaintiff AAPS and its posting on the internet of videos from these conferences is substantially certain to occur as a result of the conduct by the Board Defendants in threatening to take action against physicians who speak out.

103.    The conduct by the Board Defendants is independently tortious in improperly retaliating against physicians for their public statements on matters of public policy.

104.    Board Defendants have thereby proximately caused injury to Plaintiff AAPS in the form of chilling speech by physician speakers at its conferences, reducing attendance, and decreasing the ability to post videos on the internet of presentations made at its conferences.

105.    Plaintiff has suffered actual damages and losses in donations as a result of this conduct by the Board Defendants.

## COUNT IV
## THE BOARD DEFENDANTS' VIOLATION OF SECTION 2 OF THE SHERMAN ACT

106.    Plaintiff incorporates all other paragraphs in this Complaint as if fully set forth herein.

107.    The Board Defendants each have certification monopolies in their respective medical practice specialties, each controlling more than 80% of the market for certification of physicians in their corresponding specialties.

108.    Certification by the Board Defendants is required of physicians to practice at many hospitals and in many insurance networks.

109.    Certification by the Board Defendants is based primarily on the performance by physicians on written multiple-choice examinations, and the payments of fees by physicians.

110.    The Board Defendants have invidiously abused their examination-based monopoly in order to interfere with physicians' freedom of speech, by threatening revocation of their certifications based on statements by physicians on matters of public concern.

111.    The Board Defendants have thereby wrongly interfered with the market for medical conferences and the posting of presentations from such conferences on the internet.

112.    Plaintiff is engaged in the business of co-sponsoring medical conferences and posting presentations from such conferences on the internet, from which Plaintiff raises donations.

113.    The Board Defendants' foregoing conduct interferes with Plaintiff's business activities, and thereby impedes competition in the market of medical conferences and fundraising based on presentations posted on the internet.

114.    The Board Defendants' foregoing conduct constitutes the willful maintenance of their monopoly power by chilling freedom of speech in order to advance a political agenda preferred by the political party in control of Congress and the Executive Branch of the federal government, and thereby gain favors from federal officials to perpetuate this monopoly power by the Board Defendants.

115.    The Board Defendants intend by their foregoing conduct to maintain their monopoly over board certification, by appeasing demands by the Biden Administration and Democrats in Congress to censor speech disfavored by Biden Administration officials.

116.    The Board Defendants' foregoing conduct constitutes a violation of Section 2 of the Sherman Act, and injures Plaintiff by causing it a loss in revenue.

117.    Plaintiff seeks injunctive relief under 15 U.S.C. § 26 prohibiting the Board Defendants from retaliating against physicians based on their public statements on matters of public policy.

118.     Plaintiff seeks attorneys' fees under Sections 4 and 16 of the Clayton Act, 15 U.S.C. §§ 15, 26.

## COUNT V
## DECLARATORY JUDGMENT AGAINST DEFENDANTS

119.     Plaintiff incorporates all other paragraphs in this Complaint as if fully set forth herein.

120.     The Declaratory Judgment Act provides relief when statutory duties are violated. *Citizens for Responsibility & Ethics in Wash. v. Cheney*, 593 F. Supp. 2d 194, 222 (D.D.C. 2009).

121.     All meetings and hearings of the HSAC should be noticed in advance pursuant to § 10(a)(2) of FACA.

122.     All meetings and hearings of the HSAC must be open to the public pursuant to § 10(a)(1), (3) of FACA.

123.     The "membership of the advisory committee ... [must] be fairly balanced in terms of the points of view represented and the functions to be performed by the advisory committee," pursuant to § 5(b)(2) of FACA.

124.     HSAC must take "appropriate provisions to assure that the advice and recommendations of the advisory committee will not be inappropriately influenced by the appointing authority or by any special interest, but will instead be the result of the advisory committee's independent judgment," as required by § 5(b)(3) of FACA.

125.     HSAC has violated all of the foregoing provisions with respect to Defendant Mayorkas's command that it make recommendations concerning DGB.

126.     By undertaking to make recommendations outside of its charter, HSAC has further violated § 9(c) of FACA.

127.     By failing to disclose to the public all the records, reports, minutes, working papers,

drafts, and other documents that were prepared by or for the HSAC, Defendant Mayorkas further violates § 10(b) of FACA.

128.    Plaintiff seeks a declaration under 28 U.S.C. §§ 2201-02 that all of the foregoing conduct violates FACA.

129.    In addition, Plaintiff seeks a declaration that the Board Defendants are acting in concert with the Biden Administration in infringing on the First Amendment right of freedom of speech by physicians, by threatening to revoke their earned certifications based on the physicians' statements about matters of public concern.

130.    Plaintiff further seeks a declaration that the Board Defendants are tortiously interfering with the ability of Plaintiff to hold medical conferences and post presentations on the internet without a chilling effect caused by the Board Defendants' threatened retaliation against physicians for making statements on matters of public concern.

131.    Plaintiff further seeks a declaration that the Board Defendants are misusing their monopoly power over certification, which is based on written multiple-choice examinations, to retaliate against physicians for their public statements on matters of public policy.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff AAPS respectfully asks this Court to grant the following relief:

A.    Enter judgment in favor of Plaintiff and against Defendants on all counts;

B.    Pursuant to 28 U.S.C. §§ 1331 and 2201-02, FED. R. CIV. P. 57, and this Court's equitable powers, a declaratory judgment that Defendants have unlawfully violated Plaintiff's First Amendment rights, and pursuant also to 5 U.S.C. §§ 702, 706, that Defendant Mayorkas has violated the APA with respect to FACA and acted without statutory authority (and that no such statute authorizing such conduct would be constitutional);

C.    Pursuant to 28 U.S.C. §§ 1331, 1367 and 2201-02, FED. R. CIV. P. 57, a declaratory

judgment that Defendants ABIM, ABOG, and ABFM have tortiously interfered with Plaintiff and that these Defendants have also abused their monopolies over examination-based certification, by threatening retaliation against physicians for speaking out about matters of public concern, and an injunction under 15 U.S.C. § 26 and the common law prohibiting such retaliation by these Defendants;

D.      Pursuant to 28 U.S.C. §§ 1331, 1361, and 2201-02, FED. R. CIV. P. 57, and this Court's equitable powers, an injunction requiring Defendant Mayorkas to disband and permanently discontinue the Disinformation Governance Board;

E.      Pursuant to 28 U.S.C. §§ 1331, 1361, and 2201-02, FED. R. CIV. P. 57, and this Court's equitable powers, an injunction requiring Defendant Mayorkas to comply fully with FACA in connection with all activities by HSAC and/or its members relating to the DGB, or abolishing DGB altogether by virtue of this violation of FACA;

F.      An award of reasonable attorneys' fees to Plaintiff for bringing this lawsuit in the public interest or as provided by the Clayton Act, 15 U.S.C. § 15; and

G.      Such additional relief as may be just and proper.

Dated: July 12, 2022                              Respectfully submitted,

                                                 /s/ Andrew L. Schlafly

                                                 Andrew L. Schlafly
                                                 Attorney-in-charge
                                                 State of New Jersey Bar ID 04066-2003
                                                 SD Texas Bar ID NJ04066
                                                 939 Old Chester Rd.
                                                 Far Hills, NJ 07931
                                                 Tel: 908-719-8608
                                                 Fax: 908-934-9207
                                                 Email: aschlafly@aol.com

                                                 *Counsel for Plaintiff Association of
                                                 American Physicians and Surgeons
                                                 Educational Foundation*