Case 3:22-cv-00240   Document 43   Filed on 05/23/23 in TXSD   Page 1 of 12

United States District Court
Southern District of Texas
**ENTERED**
May 23, 2023
Nathan Ochsner, Clerk

# In the United States District Court for the Southern District of Texas

### GALVESTON DIVISION

No. 3:22-cv-240

ASSOCIATION OF AMERICAN PHYSICIANS AND SURGEONS EDUCATIONAL FOUNDATION, *PLAINTIFF*,

v.

AMERICAN BOARD OF INTERNAL MEDICINE, *ET AL.*, *DEFENDANTS*.

## MEMORANDUM OPINION AND ORDER

JEFFREY VINCENT BROWN, *UNITED STATES DISTRICT JUDGE*:

Alejandro Mayorkas has moved to dismiss the remaining claims in the Association of American Physicians and Surgeons Education Foundation's complaint. Dkt. 20. The court grants the motion.

## I. Background

The plaintiff, the Association of American Physicians and Surgeons Educational Foundation ("AAPS"), sued four defendants: (1) Alejandro Mayorkas—the U.S. Secretary of Homeland Security—in his official capacity; (2) the American Board of Internal Medicine; (3) the American Board of Obstetrics & Gynecology; and (4) the American Board of Family Medicine.

Dkt. 1 ¶¶ 19–22. AAPS co-sponsors medical conferences and publishes educational materials on the internet addressing issues in public controversy. *Id.* ¶¶ 18, 57. The board defendants[1] all certify physicians nationwide in various specialties. *Id.* ¶¶ 19–21. The board defendants have threatened to revoke physicians' board certifications for their public statements on matters of public policy. *Id.* ¶¶ 3, 37–39.

On April 27, 2022, Mayorkas announced that the Department of Homeland Security had established a Disinformation Governance Board ("the board"). Dkt. 20 at 12. The board aimed to "guide and support the Department's efforts to address mis-, dis-, and mal-information that threatens homeland security." *Id.* (quotation omitted).

After significant public backlash, the Department indefinitely paused the board on May 18. *Id.* at 13. Mayorkas then asked the Homeland Security Advisory Council to form a subcommittee to (1) evaluate the board's usefulness and (2) assess how the Department can "effectively and appropriately address disinformation." *Id.* The advisory council formed a subcommittee that met with subject-matter experts and received briefings

---

[1] The "board defendants" are the American Board of Internal Medicine, American Board of Obstetrics & Gynecology, and American Board of Family Medicine.

on relevant disinformation-related activities of the Department. *Id.* at 14. On August 24, the subcommittee issued its final report, concluding that there is "no need for a separate . . . [b]oard" to support the Department's "underlying work." *Id.* That same day, the advisory council accepted the subcommittee's recommendation. *Id.* Mayorkas then announced that he terminated the board and rescinded its charter. *Id.*

AAPS first alleges that the board defendants "wrongly misuse their authority" to "chill speech" and censor public opinions that are critical of "Dr. Anthony Fauci, lockdowns, mask mandates, [COVID-19] vaccines[,] and even abortions." Dkt. 1 ¶ 1. It also alleges that the board defendants are "responding to pressure or requests by the Biden Administration or Democrats in Congress to censor the expression of independent viewpoints by physicians." *Id.* ¶ 40.

AAPS then contends that Mayorkas "created the Orwellian Disinformation Governance Board . . . to censor disfavored information based on its content." *Id.* ¶ 9. It believes the board "chills and infringes on [its] First Amendment right of freedom of speech." *Id.* ¶ 27. The mere existence of the board—according to AAPS—"encourages or induces the [b]oard [d]efendants and others to retaliate against speakers based on the content of their speech." *Id.* ¶ 75. It also claims that Mayorkas's creation of

the board "constituted final agency action" that was "beyond the charter and expertise" of the advisory council. *Id.* ¶¶ 84–85. AAPS finally contends that the advisory council violated the Federal Advisory Committee Act by not (1) ensuring its advisory council was "fairly balanced," (2) appointing a designated federal officer, or (3) making documents publicly available. *Id.* ¶¶ 86–94.

In its complaint, AAPS brings claims against Mayorkas for allegedly violating the First Amendment and the Administrative Procedure Act. *Id.* ¶¶ 74–98. It seeks declaratory and injunctive relief, asking the court to require Mayorkas to "disband and permanently discontinue the Disinformation Governance Board" and to "comply fully with [the Federal Advisory Committee Act]." *Id.* at 28. AAPS also asserts several claims against the board defendants. *Id.* at ¶¶ 74–82, 99–131.

Mayorkas and the board defendants have separately moved to dismiss AAPS's complaint under Fed. R. Civ. P. 12(b). Dkts. 20, 21, 22, 23. On May 16, 2023, the court granted the board defendants' motion to dismiss. Dkts. 23, 42. The court now addresses Mayorkas's remaining motion to dismiss under Fed. R. Civ. P. 12(b)(1) and 12(b)(6).

## II. Legal Standard

Rule 12(b)(1) requires dismissal if the court "lacks the statutory or constitutional power to adjudicate the case." *Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998). The party asserting jurisdiction bears the burden of proof. *Howery v. Allstate Ins. Co.*, 243 F.3d 912, 916 (5th Cir. 2001). Federal courts have jurisdiction over a claim between parties only if the plaintiff presents an actual case or controversy. U.S. Const. art. III, § 2, cl. 1; *Okpalobi v. Foster*, 244 F.3d 405, 425 (5th Cir. 2001). "The many doctrines that have fleshed out that 'actual controversy' requirement—standing, mootness, ripeness, political question, and the like—are 'founded in concern about the proper—and properly limited—role of the courts in a democratic society.'" *Roark & Hardee LP v. City of Austin*, 522 F.3d 533, 541–42 (5th Cir. 2008) (quoting *Allen v. Wright*, 468 U.S. 737, 750 (1984)).

To test whether the party asserting jurisdiction has met its burden, a court may rely upon "(1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Barrera–Montenegro v. United States*, 74 F.3d 657, 659 (5th Cir. 1996). When standing is challenged in a motion to dismiss, the court

"must 'accept as true all material allegations of the complaint and . . . construe the complaint in favor of the complaining party.'" *Ass'n of Am. Physicians & Surgeons v. Tex. Med. Bd.*, 627 F.3d 547, 550 (5th Cir. 2010) (quoting *Pennell v. City of San Jose*, 438 U.S. 1, 7 (1988)).

## III. Analysis

The court begins, as it must, with a review of its jurisdiction. Mayorkas contends that AAPS's claims against him are moot because the board no longer exists. Dkt. 20 at 17–20. Meanwhile, AAPS counters that its claims are not moot because (1) the Department's termination of the board falls under the voluntary-cessation exception, and (2) in the absence of the board, the Department continues to combat disinformation generally. Dkt. 32 at 27–30. Mootness is dispositive here and fatal for the claims AAPS properly brings before the court.

### A. Mootness

"Under Article III of the Constitution, federal courts may adjudicate only actual, ongoing cases or controversies" and do not have "the power 'to decide questions that cannot affect the rights of litigants in the case before them.'" *Lewis v. Cont'l Bank Corp.*, 494 U.S. 472, 477 (1990) (quoting *North Carolina v. Rice*, 404 U.S. 244, 246 (1971)). "To qualify as a case fit for federal-court adjudication, 'an actual controversy must be extant at all stages

of review, not merely at the time the complaint is filed.'" *Arizonans for Off. Eng. v. Arizona*, 520 U.S. 43, 67 (1997) (quoting *Preiser v. Newkirk*, 422 U.S. 395, 401 (1975)). "A case becomes moot—and therefore no longer a 'Case' or 'Controversy' for purposes of Article III—when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013) (quotation omitted).

In other words, "[m]ootness applies when intervening circumstances render the court no longer capable of providing meaningful relief to the plaintiff." *Ctr. for Biological Diversity, Inc. v. BP Am. Prod. Co.*, 704 F.3d 413, 425 (5th Cir. 2013). Courts may "assume without deciding that standing exists in order to analyze mootness." *Friends of the Earth, Inc.*, 528 U.S. at 180 (citing *Arizonans for Off. Eng.*, 520 U.S. at 66–67).

AAPS's alleged First Amendment violations against Mayorkas all rely on the board's creation, its "chilling effect on internet speech and medical conference presentations, and [its] mere existence encourage[ing] or induc[ing] the [board defendants] and other[s] to retaliate against speakers based on the content of their speech." Dkt. 1 ¶ 75. Similarly, AAPS's Administrative Procedure Act claim, which encompasses alleged violations of the Federal Advisory Committee Act, rests on Mayorkas's creation of the

board and his "order to the advisory council to provide a recommendation to him concerning [its] activities." *Id.* ¶ 84. The Department and Mayorkas eliminated the board in August 2022 through a formally announced change to official Department policy. Dkt. 20 at 14 n.23. This gave AAPS the precise relief that it requested—to "disband," "permanently discontinue," and "abolish" the board. Dkt. 1 at 28; *see also Amawi v. Paxton*, 956 F.3d 816, 819, 821 (5th Cir. 2020) (dismissing an appeal as moot when a statutory amendment "provided the plaintiffs the very relief their lawsuit sought").

Mayorkas argues that AAPS's claims all rely on the board's continued existence and became moot with the board's termination in August 2022. Dkt. 20 at 17–18. This is true: "[A] case challenging a statute, executive order, or local ordinance usually becomes moot if the challenged law has expired or been repealed." *Spell v. Edwards*, 962 F.3d 175, 179 (5th Cir. 2020). Mayorkas's disbandment of the board and revocation of its charter eliminated any live case or controversy against him, making AAPS's claims moot.

### B. Voluntary-Cessation Exception

AAPS invokes the voluntary-cessation exception to mootness. This exception requires courts to examine defendant-induced mootness cautiously. *See Yarls v. Bunton*, 905 F.3d 905, 910 (5th Cir. 2018). Generally,

voluntary conduct does not moot a case unless the defendant demonstrates that "it is absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur." *Freedom from Religion Found., Inc. v. Abbott*, 58 F.4th 824, 833 (5th Cir. 2023) (quoting *Sossamon v. Lone Star State of Tex.*, 560 F.3d 316, 325 (5th Cir. 2009), *aff'd on other grounds sub nom. Sossamon v. Texas*, 563 U.S. 277 (2011)); *Franciscan All., Inc. v. Becerra*, 47 F.4th 368, 376 (5th Cir. 2022). "Essentially, the goal is to determine whether the defendant's actions are 'litigation posturing' or whether the controversy is actually extinguished." *Yarls*, 905 F.3d at 910.

Importantly for this case, all defendants are not treated equally under the voluntary-cessation exception. When governmental officials (rather than individual defendants) voluntarily cease possibly wrongful conduct, courts "presume[] that [government] actors, as public representatives, act in good faith." *Freedom from Religion Found., Inc.*, 58 F.4th at 833. And "[w]ithout evidence to the contrary, [courts] assume that formally announced changes to official governmental policy are not mere litigation posturing.'" *Sossamon*, 560 F.3d at 325. "Among other things, the government's ability to reimplement the statute or regulation at issue is insufficient to prove the voluntary-cessation exception." *Freedom from Religion Found., Inc.*, 58 F.4th at 833. Contrary to AAPS's argument, Dkt. 32 at 28, Mayorkas is

entitled to this good-faith presumption absent evidence that he will reimplement the board.

The voluntary-cessation exception does not apply here. Neither the complaint nor undisputed facts suggest that Mayorkas or the Department will reinstate the board. AAPS relies on statements from the White House press secretary that the executive branch is "committed to . . . combat[t]ing disinformation," which predated the board's rollout. Dkt. 32 at 28–29. It also argues that Mayorkas's board termination is "simply not reassuring enough" because the Department is still "able to address the disinformation threat streams that can undermine the security of our homeland." *Id.* at 29–30 (quoting U.S. Dep't of Homeland Sec., Disinformation Best Practices and Safeguards Subcommittee (2022)). This evidence does not show that Mayorkas and the Department *will* re-establish the board; it merely demonstrates their *ability* to do so. That, by itself, is insufficient to prove the voluntary-cessation exception. *See Freedom from Religion Found., Inc.*, 58 F.4th at 833. Accordingly, AAPS's claims are not saved by the voluntary-cessation exception.

### C. New Allegations

AAPS finally argues that its claims against Mayorkas are not moot because the Department generally continues its long-standing practice of

countering disinformation. Dkt. 32 at 27–28. It contends that "the work planned for the . . . [b]oard has not ceased[] but has merely been dispersed among other groups" within the Department. *Id.* But AAPS did not make any of these allegations in its complaint or seek relief for the Department's generalized role in attacking disinformation. *See* Dkt. 1. Instead, it focused on Mayorkas's establishment of the board and its effects on free speech. *Id.* ¶¶ 9–14, 27–28, 41–65, 69–73. These claims are "not properly before the court"—AAPS did not bring them in its compliant, instead raising them for the first time in response to Mayorkas's motion to dismiss. Dkts. 1, 32; *see also Cutrera v. Bd. of Supervisors of La. State Univ.*, 429 F.3d 108, 113–14 (5th Cir. 2005). Accordingly, the court will not consider these new allegations now.[2]

\* \* \*

The court expresses no opinion on the prudence of Mayorkas's (or the Department's) actions. Nevertheless, the court does not have subject-matter

---

[2] The court acknowledges that it may treat these new allegations as a motion for leave to amend. *See Cash v. Jefferson Assocs., Inc.*, 978 F.2d 217, 218 (5th Cir. 1992). It will not allow leave to amend here. Under this court's local procedures, AAPS—who is represented by private counsel—was afforded an opportunity to amend. Gal. Div. R. Prac. 6. Additionally, allowing AAPS to amend would be futile, cause undue delay, and unfairly prejudice Mayorkas. Finally, AAPS made no attempt to explain its delay in raising these new allegations and did not file a motion seeking leave to amend its complaint.

jurisdiction over the claims properly before the court. Accordingly, the court grants Mayorkas's motion to dismiss under Fed. R. Civ. P. 12(b)(1). Dkt. 20. Because the court grants Mayorkas's motion to dismiss under Rule 12(b)(1), the court does not reach his Rule 12(b)(6) arguments.

As no claims remain against any defendants, the court will issue a final judgment separately.

Signed on Galveston Island this 23rd day of May, 2023.

JEFFREY VINCENT BROWN
UNITED STATES DISTRICT JUDGE