IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

|  |  |
|---|---|
| ASSOCIATION OF AMERICAN PHYSICIANS AND SURGEONS EDUCATIONAL FOUNDATION, PIERRE KORY, M.D., PAUL MARIK, M.D., and KARL N. HANSON, M.D., <br><br> Plaintiffs, <br><br> v. <br><br> AMERICAN BOARD OF INTERNAL MEDICINE, AMERICAN BOARD OF OBSTETRICS & GYNECOLOGY, AMERICAN BOARD OF FAMILY MEDICINE, and KRISTI NOEM, in her official capacity as the secretary of the U.S. Department of Homeland Security, <br><br> Defendants. | Case No. 3:22-cv-00240 |

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF
DEFENDANT AMERICAN BOARD OF INTERNAL MEDICINE'S
MOTION TO DISMISS AMENDED COMPLAINT**

# **TABLE OF CONTENTS**

*Page*

I. INTRODUCTION ..................................................................................................1

II. ARGUMENT .........................................................................................................1

    A. Plaintiffs' Constitutional Claims Fail Because ABIM Is Not a State Actor and Plaintiffs Have Not Plausibly Pled State Action ..........................2

    B. Drs. Kory and Marik Have Not Plausibly Pled a Claim for Constitutional or Contractual Due Process .....................................................4

        1. The Constitutional Due Process Claim Fails ......................................4

        2. The Contract Claim Fails ...................................................................5

    C. Plaintiffs Cannot Transform Their Complaints about ABIM's Standards into a Plausible Antitrust Claim ....................................................6

        1. Plaintiffs Fail to State a Sherman Act Section One Claim ................6

        2. Plaintiffs Fail to State a Sherman Act Section Two Claim................8

        3. Plaintiffs Do Not and Cannot Allege Antitrust Standing...................9

    D. Plaintiffs Have Not Plausibly Pled a Tortious Interference Claim .............11

    E. Drs. Kory and Marik Have Not Plausibly Pled a Defamation Claim .........12

III. CONCLUSION ....................................................................................................14

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*ABIM v. Rushford*.
　114 F.4th 42 (1st Cir. 2024)..................................................................................................4, 5, 6

*Am. Amusement Mach. Ass'n v. Kendrick*,
　115 F. Supp. 2d 943 (S.D. Ind. 2000), *rev'd on other grounds*, 244 F.3d 572
　(7th Cir. 2001)...............................................................................................................................7

*Apani Sw., Inc. v. Coca-Cola Enters., Inc.*,
　300 F.3d 620 (5th Cir. 2002) ......................................................................................................8

*Ashcroft v. Iqbal*,
　556 U.S. 662 (2009)..............................................................................................................1, 13

*Bell Atl. Corp. v. Twombly*,
　550 U.S. 544 (2007)..........................................................................................................1, 6, 10

*Bradford v. Vento*,
　48 S.W.3d 749 (Tex. 2001)........................................................................................................12

*Brentwood Academy v. Tennessee Secondary School Athletic Association*,
　531 U.S. 288 (2001)....................................................................................................................3

*DataCell ehf v. Visa*,
　No. 1:14-CV-1658, 2015 WL 4624714 (E.D. Va. July 30, 2015)............................................10

*Davis v. Jones*,
　NO. 5:23-CV-00032-RWS, 2024 WL 2707952 (E.D. Tex. Mar. 13, 2024) ...........................14

*Finch v. Fort Bend Indep. Sch. Dist.*,
　333 F.3d 555 ...............................................................................................................................4

*Hamilton v. Mississippi*,
　No. 4:23-CV-46-SA-DAS, 2023 WL 4246066 (N.D. Miss. June 28, 2023)...........................11

*Informed Consent Action Network v. Youtube LLC*,
　582 F. Supp. 3d 712 (N.D. Cal. 2022) ........................................................................................2

*LeBlanc v. DISA Glob. Sols., Inc.*,
　No. CV 17-76-SDD-EWD, 2020 WL 8363123 (M.D. La. Feb. 19, 2020) .............................11

*LifeScan, Inc. v. Home Diagnostics, Inc.*,
　103 F. Supp. 2d 345 (D. Del. 2000), *aff'd*, 13 F. App'x 940 (Fed. Cir. 2001)..........................7

*Louisiana Division of Sons of Confederate Veterans v. City of Natchitoches*,
    821 F. App'x 317 (5th Cir. 2020) ................................................................................. 4

*Malone v. WP Co. LLC*, No. 3:22-cv-00046, 2023 WL 6447311 (W.D. Va. Sept.
    29, 2023) ..................................................................................................................... 14

*Marucci Sports, L.L.C. v. NCAA*,
    751 F.3d 368 (5th Cir. 2014) ..................................................................................... 10

*Quezambra v. United Domestic Workers of Am.*,
    445 F. Supp. 3d 695 (C.D. Cal. 2020) ......................................................................... 2

*Riser v. Wsyx-Tv Abc-6*,
    No. C2-02-091, 2002 WL 31409427 (S.D. Ohio July 17, 2002) ................................ 2

*S&S Emergency Training Sols., Inc. v. Elliot*,
    564 S.W. 3d 843 (Tex. 2018) ....................................................................................... 5

*Smith v. Textile Rental Servs. Ass'n*,
    NO. 3:20-CV-3178-B, 2021 WL 3565578 (N.D. Tex. Aug. 12, 2021) ..................... 13

*Texas Beef Cattle Co. v. Green*,
    921 S.W.2d 203 (Tex. 1996) ...................................................................................... 12

*Thomas v. Graham Mortg. Corp.*,
    408 S.W.3d 581 ............................................................................................................ 4

*Thomas v. Thomas*,
    No. 9:14-CV-00135-KFG, 2015 U.S. Dist. LEXIS 175133 (E.D. Tex. Dec. 9,
    2015) ............................................................................................................................. 2

*Turnage v. Britton*,
    661 F. Supp. 3d 628 (S.D. Miss. 2023) ....................................................................... 2

*Turner v. Wells*,
    879 F.3d 1254 (11th Cir. 2018) ................................................................................. 14

*Waggoner v. Denbury Onshore, L.L.C.*,
    612 F. App'x 734 (5th Cir. 2015) .............................................................................. 10

*Watts v. Northside Indep. Sch. Dist.*,
    37 F. 4th 1094 (5th Cir. 2022) ..................................................................................... 4

I.      **INTRODUCTION**

This case is Plaintiffs' attempt to alchemize their disagreements with ABIM into a cause of action using a disparate range of theories—constitutional, antitrust, tortious interference, and defamation.[1]  In its initial memorandum in support of its motion to dismiss, ABIM explained why each of those theories fails.  The facts simply do not fit the claims.  In their opposition to ABIM's motion (ECF 76) ("Opposition or Opp."), Plaintiffs essentially ask the Court to suspend plausibility and disregard the law to salvage their Amended Complaint.

Unable to connect well-pled factual allegations to the elements of their claims, Plaintiffs use their Opposition to introduce new (yet still insufficient) factual allegations, toss out novel and unsupported legal theories, and unabashedly ask the Court to give them the benefit of the doubt to overcome a motion to dismiss—even as they concede dispositive deficiencies in their already amended pleading.  The Opposition thus only underscores that Plaintiffs cannot satisfy the pleading standards of Rule 12(b)(6) as articulated by *Twombly* and *Iqbal*.  Because the Amended Complaint does not plausibly plead any claim against ABIM, it should be dismissed.

---

[1]     Abbreviations herein have the meanings used in ABIM's initial memorandum (ECF 71) ("Initial Memorandum" or "Init. Mem.").

## II. ARGUMENT

### A. Plaintiffs' Constitutional Claims Fail Because ABIM Is Not a State Actor and Plaintiffs Did Not Plausibly Plead State Action

Plaintiffs' constitutional claims fail as a matter of law for the threshold reason that ABIM is not a state actor. Nothing in Plaintiffs' Opposition changes that.

*First*, Plaintiffs are wrong that whether the conduct at issue constitutes "state action" cannot be resolved on a motion to dismiss because the analysis is fact specific. Opp. at 9. That the inquiry is fact-bound does not relieve Plaintiffs of their burden to adequately plead facts indicative of state action under the governing tests. Courts routinely dismiss claims at the Rule 12(b)(6) stage when, as in this case, the allegations of state action are insufficient as a matter of law.[2] Here, Plaintiffs essentially concede that their allegations are likely "insufficient to show state action by a private entity" under any of the three tests for state action. *Id.* at 10. To remedy that, they ask the Court to consider all three tests in combination. *Id.* Plaintiffs cite no authority for that approach. There is none. Factual allegations that are individually insufficient to allege state action cannot become sufficient when combined with other, equally insufficient, allegations.

*Second*, as to the "public functions test," Plaintiffs do not dispute that, under well-established law, a private entity's certification decision does not become state action simply

---

[2] *See, e.g., Turnage v. Britton*, 661 F. Supp. 3d 628, 633 (S.D. Miss. 2023) (granting motion to dismiss because plaintiff failed to adequately allege state action); *Thomas v. Thomas*, No. 9:14-CV-00135-KFG, 2015 U.S. Dist. LEXIS 175133, *13 (E.D. Tex. Dec. 9, 2015) (same); *see also Informed Consent Action Network v. Youtube LLC*, 582 F. Supp. 3d 712, 724 (N.D. Cal. 2022) (same); *Quezambra v. United Domestic Workers of Am.*, 445 F. Supp. 3d 695, 705 (C.D. Cal. 2020) (same); *Riser v. Wsyx-Tv Abc-6*, No. C2-02-091, 2002 WL 31409427, *5 (S.D. Ohio July 17, 2002) (same).

because a government entity chooses to accord it significance. *See* Init. Mem. at 8-10 (citing cases). Instead, Plaintiffs assert that this case is different from those other cases because they are alleging "discipline by a private entity in performing a public function ordinarily done by a state entity," and not simply a decision to grant or deny certification. Opp. at 10-14. Yet Plaintiffs make no well-pled allegations that revoking the board certification of physicians is ordinarily—or ever—done by a state entity (it is not; it is done by private certification organizations like ABIM). Moreover, Plaintiffs point to nothing in the governing case law to suggest that a private entity's decision to revoke certification is different for purposes of the state-action doctrine than an initial decision to grant or deny certification. Nor would such a distinction make sense. Under Plaintiffs' theory, a private organization's decision to deny certification based on a physician's views of COVID-19 treatments, for example, would not be state action, while a decision by that same organization to revoke certification based on those views would be. That would defy logic. The well-established principle that certification organizations are not state actors regardless of the weight accorded to their credentialing decisions prevails here.

**Third**, as to the "state compulsion or coercion" and "joint action" tests, Plaintiffs continue to rest on their allegation that ABIM acted in concert with FSMB—which, like ABIM, is a *private organization*. *See* Init. Mem. at 10. Nor can Plaintiffs save this theory by asserting—contrary to the holdings of multiple courts—that FSMB is engaged in state action under *Brentwood Academy v. Tennessee Secondary School Athletic Association*, 531 U.S. 288 (2001). *See* Opp. at 5, 12, 15. Even if that were correct, all ABIM is alleged to have done with respect to FSMB is "agree" with its policy goals and act accordingly. *See*

3

Opp. at 5, 16. Under well-established law, such agreement would not constitute state action even if FSMB were a state actor. *See* Init. Mem. at 11 (citing *Louisiana Division of Sons of Confederate Veterans v. City of Natchitoches*, 821 F. App'x 317 (5th Cir. 2020), for the proposition that a private entity's agreement with request by government is not state action); *see also Watts v. Northside Indep. Sch. Dist.*, 37 F. 4th 1094, 1097 (5th Cir. 2022) ("[S]tate action exists when a state actor *commands* others to commit acts as much as when the state actor commits those act." (emphasis added)).

Because ABIM is not a state actor and was not engaged in state action, Plaintiffs' constitutional claims should be dismissed.

    **B. Drs. Kory and Marik Have Not Plausibly Pled a Claim for Constitutional or Contractual Due Process**

        **1. The Constitutional Due Process Claim Fails**

Even if ABIM could be subject to a due process claim based on the state action doctrine, Plaintiffs' due process claim fails. While Plaintiffs are correct that a hearing must be fair and impartial, *citing Finch v. Fort Bend Indep. Sch. Dist.,* 333 F.3d 555. 562 (5th Cir. 2003)[3]; *Thomas v. Graham Mortg. Corp.,* 408 S.W.3d 581. 595 (Tex. App. 2013), they have not plausibly alleged that the process Drs. Kory and Marik received was insufficient. Drs. Kory and Marik concede, as they must, that each had notice and an opportunity to respond. Plaintiffs strain to distinguish this case from *ABIM v. Rushford*. 114 F.4th 42, 55 (1st Cir. 2024), which affirmed the dismissal of a substantially identical claim. They argue

---

[3]   In *Finch*, the court held the process was sufficient when, as in this case, the former principal received notice of her reassignment and an opportunity to present her argument. 333 F.3d at 562.

4

*Rushford's* holding is inapplicable here because in that case, the physician refused to address the allegations against him in ABIM's disciplinary process, whereas Drs. "Kory and Marik addressed the charges head-on and challenged ABIM" in the course of its multi-stage disciplinary process. Opp. at 25. That proves too much. Because they concede they were afforded notice and opportunity to be heard, they cannot state a due process claim.

### 2. The Contract Claim Fails

The Amended Complaint asserts a combined claim for a "[v]iolation of Constitutional and Contractual Due Process," leaving unsaid which contract was allegedly breached. Am. Compl. ¶¶ 227-233. In their Opposition, Plaintiffs for the first time identify ABIM's Policies and Procedures for Certification ("ABIM P&P") as the relevant contract. Opp. at 22. But they still do not even address any of remaining required elements of a contract claim. Opp. at 22-24. They would have no basis to plead such a claim because it is plain on the face of the Amended Complaint that Plaintiffs could not plausibly allege that ABIM breached the P&P. *See S&S Emergency Training Sols., Inc. v. Elliot,* 564 S.W. 3d 843, 847 (Tex. 2018).

The ABIM P&P explicitly allowed ABIM to suspend or revoke Dr. Kory and Dr. Marik's board certifications if they did not comply with ABIM's standards. Plaintiffs make selective references to the ABIM P&P without addressing this express vested right. Am. Compl. ¶¶ 53, 120; Opp. at 23. What they omit is that Drs. Kory and Marik agreed under the ABIM P&P that ABIM could suspend or revoke board certification if "ABIM obtains evidence that ***in its judgment*** demonstrates" that a diplomate "failed to maintain moral, ethical, or professional behavior satisfactory to ABIM" or "engaged in misconduct that

5

adversely affects professional competence or integrity." ABIM P&P at 18 (emphasis added). In *Rushford*, the court affirmed dismissal of the plaintiff's breach of contract claim precisely because ABIM's P&P vested ABIM with the ability to suspend or revoke the plaintiff's board certification if he did not comply with certain standards and requirements. *Rushford*, 114 F.4th at 55. This Court should likewise dismiss the contract claim here.

      **C.    Plaintiffs Cannot Transform Their Complaints about ABIM's Standards into a Plausible Antitrust Claim**

           **1.    Plaintiffs Fail to State a Sherman Act Section One Claim**

Plaintiffs do not plausibly plead an agreement between ABIM and its competitors that restrained trade in a particular market. Plaintiffs eschew the *Twombly* standard when they repeatedly suggest that the Board Defendants must have colluded because they each used the words "misinformation" and "disinformation." Opp. at 18. A plausible allegation of collusion requires much more than the common use of commonly used words. And in any event, the Board Defendants certify physicians in different specialties and therefore do not compete with each other.

Equally threadbare is Plaintiffs' contention that ABIM's joint statement with ABFM and non-parties FSMB and the American Board of Pediatrics (ABP) constitutes a "plus" factor supporting a Section One violation. Again, none of those alleged co-conspirators is a competitor of ABIM. And in Plaintiffs' telling, "if" that joint statement "concerned setting prices by different companies," then "[o]f course that would be an antitrust violation for collusive pricing." Opp. at 18-19. Plaintiffs cite no authority for the giant inferential leap they ask the Court to take with that analogy. A joint statement regarding medical ethics, however strongly one might disagree with it, has nothing to do with price setting.

Nor does it evidence any other kind of illegal conduct, notwithstanding Plaintiffs' exhortation that the Court "[i]magine" that it does. Mission-driven organizations like the Board Defendants routinely issue joint statements addressing matters bearing on their missions without running afoul of the Sherman Act.[4]

Finally, Plaintiffs' attempt to spin ABIM's accurate reporting of Drs. Kory and Marik's certification statuses on ABIM's website into another "plus" factor is similarly implausible. Opp. at 19. When they allege that such reporting had no legitimate business or academic purpose, Plaintiffs disregard that ABIM reports all of its current and former diplomates' certification statutes on its website in furtherance of ABIM's mission to provide certification information to the public. That is what physicians voluntarily sign up for when they agree to seek certification from ABIM or one of the other Board Defendants. Plaintiffs do not allege that ABIM somehow singled out Drs. Kory and Marik with its certification status reporting, or that it reported their statuses any differently that it reports the statuses of other physicians who have had their certifications revoked. Nor do Plaintiffs cite any authority for the proposition that ABIM's certification status reporting constitutes a "plus" factor evidencing bad faith conduct redressable by the antitrust laws.

---

[4]   *See, e.g.*, *LifeScan, Inc. v. Home Diagnostics, Inc.*, 103 F. Supp. 2d 345, 372 (D. Del. 2000), *aff'd*, 13 F. App'x 940 (Fed. Cir. 2001) (American Diabetes Association, Center for Disease Control, and others issued joint statement addressing importance of glucose monitoring for diabetics); *Am. Amusement Mach. Ass'n v. Kendrick*, 115 F. Supp. 2d 943, 965 (S.D. Ind. 2000), *rev'd on other grounds*, 244 F.3d 572 (7th Cir. 2001) ("[T]he American Academy of Pediatrics, the American Medical Association, the American Psychological Association, the American Academy of Child and Adolescent Psychiatry, and the American Academy of Family Physicians issued a Joint Statement on the public health aspects of violence in the media").

Even putting aside Plaintiffs' deficient allegations of an agreement between competitors, their Sherman Act Section One claim would fail because their market definition allegations are insufficient to overcome a motion to dismiss. ABIM addresses that deficiency further in the next section of this memorandum.

### 2. Plaintiffs Fail to State a Sherman Act Section Two Claim

Plaintiffs' Section Two claim should be dismissed because Plaintiffs do not plausibly define the relevant market or plead exclusionary conduct by ABIM.

Plaintiffs argue that they have sufficiently defined a relevant antitrust market by alleging that ABIM controls an estimated 80% of the certification of physicians in internal medicine and its subspecialties. This is not enough. Courts dismiss antitrust claims when "the plaintiff fails to define its proposed relevant market with reference to the rule of reasonable interchangeability and cross-elasticity of demand." *Apani Sw., Inc. v. Coca-Cola Enters., Inc.*, 300 F.3d 620, 628 (5th Cir. 2002). The Amended Complaint is silent on the extent to which ABIM's "product"—medical specialty certification—is reasonably interchangeable with any substitutes. It is similarly silent on the extent to which changes in the price of ABIM's "product" would impact demand for its substitutes, and vice versa.

Plaintiffs' relevant market theory is also confusing and contradictory. On the one hand, Plaintiffs claim that ABIM controls 80% of an alleged internal medicine board certification market. Opp. at 20-21. On the other, they rely on a joint statement issued by ABIM, ABFM, and nonparties ABP and FSMB as evidence of some kind of impermissible conduct akin to price-fixing among competitors—but none of ABIM's alleged co-conspirators in that statement competes with ABIM. ABFM and ABP do not certify

8

internists, and FSMB is not even a certification organization. Opp. at 18-19.

Just as Plaintiffs cannot explain how they have plausibly defined a relevant market, they cannot explain how they have plausibly alleged exclusionary conduct. As ABIM argued in its Initial Memorandum, Plaintiffs have no support for the proposition that interfering with speech is exclusionary conduct, and plead no facts establishing any reduction in competition in either the physician certification markets or the market for medical conferences. Init. Mem. at 19. Their Opposition addresses this ground for dismissal with just one conclusory sentence stating that ABIM excluded Drs. Kory and Marik from the unclearly defined market by revoking their certifications. Opp. at 22. No plausible reading of Plaintiffs' allegations allows the conclusion that the revocations of two physicians' certifications had any impact at all on the market for certification, much less that they helped ABIM create or maintain a monopoly in the certification markets.

In sum, the conduct Plaintiffs allege cannot satisfy the elements of Section One or Section Two Sherman Act claims.

### 3.     Plaintiffs Do Not and Cannot Allege Antitrust Standing

It is likewise dispositive of the antitrust claims that Plaintiffs do not sufficiently allege antitrust standing.

With respect to Plaintiff AAPS, Plaintiffs essentially concede that it has not pled any antitrust injury: "The antitrust standing by Kory and Marik give this court Article III jurisdiction . . . and nothing would be gained by dismissing a co-plaintiff at this early stage." Opp. at 21. Plaintiffs cite no authority for the proposition that one plaintiff can

9

glean antitrust standing from another.[5] Their argument that AAPS should simply be allowed to come along for the ride flouts the Rules of Civil Procedure and *Twombly*, which emphasizes that Plaintiffs must plead plausible antitrust cases before defendants are forced incur the substantial expense and burden of discovery and further proceedings to defend an antitrust claim. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557-60 (2007) ("So, when the allegations in a complaint, however true, could not raise a claim of entitlement to relief, this basic deficiency should . . . be exposed at the point of minimum expenditure of time and money by the parties and the court.") (cleaned up).

Drs. Kory and Marik at least try to plead antitrust injury, but their allegations are insufficient. They allege harm only to their own pocketbooks, rather than to competition itself, as required to establish antitrust injury. *See Marucci Sports, L.L.C. v. NCAA*, 751 F.3d 368, 376 (5th Cir. 2014) ("[A]ntitrust laws are designed to protect competition, not competitors."). Moreover, their allegations are factually implausible. While claiming that "[e]minent physicians are excluded from the market," Plaintiffs do not allege that Dr. Kory or Dr. Marik has lost a job as a result of ABIM's actions. Opp. at 22. Nor do they plead facts suggesting that they have otherwise been excluded from any properly defined market.

---

[5] Plaintiffs cite *Waggoner v. Denbury Onshore, L.L.C.*, 612 F. App'x 734, 737 (5th Cir. 2015), for the proposition that antitrust standing is not necessarily limited to competitors, purchasers, or consumers in the relevant market. Opp. at 21. But *Waggoner* does not contemplate an uninjured plaintiff deriving standing from an allegedly injured one. Plaintiffs also dismiss *DataCell ehf v. Visa*, No. 1:14-CV-1658, 2015 WL 4624714 (E.D. Va. July 30, 2015), as "unpersuasive" on the basis that the court "did not recognize Wikileaks as a legitimate part of the media"—a consideration that played no role whatsoever in the court's injury analysis. Opp. at 22.

Opp. at 22. In fact, Plaintiffs concede that Dr. Kory continues to work as an expert witness and that Dr. Marik has been retired for more than fifteen years. Am. Compl. ¶¶ 13, 15. And Plaintiffs plead no facts supporting their assertion (which they make for the first time in their Opposition) that the revocations of Dr. Kory and Marik's certifications "reduce the quantity and quality of medical services." Opp. at 22.

Accordingly, Plaintiffs lack antitrust standing for their claims against ABIM.

### D. Plaintiffs Have Not Plausibly Pled a Tortious Interference Claim

Plaintiffs do not even attempt to respond to ABIM's motion to dismiss the tortious interference claim asserted by AAPS. Opp. at 26-27. AAPS has thus conceded it cannot state such a claim against ABIM. *See* L.R. 7.4 ("failure to respond to a motion will be taken as a representation of no opposition"); *Hamilton v. Mississippi*, No. 4:23-CV-46-SA-DAS, 2023 WL 4246066, at *3 (N.D. Miss. June 28, 2023) (dismissing claim because the plaintiff conceded the claim when it "offered no substantive response" to the defendant's arguments for dismissal).

Drs. Kory and Marik also cannot state a tortious interference claim against ABIM because they make only vague and conclusory allegations of loss of existing business relations. With nothing in the Amended Complaint to rely on, Plaintiffs assert in their Opposition that Dr. Kory "was removed as an expert witness as a result of the loss of his ABIM certification." Opp. at 26. Even if such an unsubstantiated allegation were sufficient to support a claim, the assertion should be disregarded because it is not alleged in Plaintiffs' already amended operative complaint. *See LeBlanc v. DISA Glob. Sols., Inc.*, No. CV 17-76-SDD-EWD, 2020 WL 8363123, at *4 (M.D. La. Feb. 19, 2020) ("A party

11

cannot amend its complaint in a subsequent brief, and an opposition cannot substantively expand or refine a party's claims presented in its original complaint."). And in any event, Dr. Kory does not allege, as he must, that ABIM intended for Dr. Kory to lose the purported expert witness engagement, that the revocation of his certification was the proximate cause of such loss, and that Dr. Kory incurred damages. *See Texas Beef Cattle Co. v. Green,* 921 S.W.2d 203, 210 (Tex. 1996). The rest of Drs. Kory and Marik's argument rests on even more vague and conclusory assertions about their "testifying frequently in various [unspecified] legal and legislative forums" and "numerous [unspecified] third-party contracts or advocacy activities [that allegedly] would have occurred" absent ABIM's conduct. Opp. at 26.

Moreover, Plaintiffs fail to address the controlling authority holding that knowledge of incidental interference is not enough to establish a tortious interference claim. *See, e.g., Bradford v. Vento,* 48 S.W.3d 749, 758 (Tex. 2001) ("[I]f the actor had no desire to effectuate the interference by his action but knew that it would be a mere incidental result of conduct he was engaging in for another purpose, the interference may be found to be not improper.") (cleaned up). Plaintiffs have pled nothing more than the kind of incidental interference that cannot support a claim.

### E.  Drs. Kory and Marik Have Not Plausibly Pled a Defamation Claim

The Opposition also does nothing to save Dr. Kory and Marik's defamation claim.

*Failure to Identify Purported Defamatory Statement*: Drs. Kory and Marik admit that they did not identify any specific statement by ABIM that supposedly defamed them. *See* Opp. at 27 (characterizing defamation claim as based on ABIM's "revocation of Kory

12

and Marik's certifications"); *id.* at 29 (same). That is fatal to their claim. *See* Init. Mem. at 25-27 (explaining requirement to identify specific defamatory statements to proceed with a defamation claim). Nor can Drs. Kory and Marik repair that defect by alleging that ABIM might have been "involved" in the *Washington Post* and *Medscape* articles that reported on the certification revocations. *See* Opp. at 29 ("At this stage of the proceeding discovery is needed to determine the actual role of ABIM in these publications."). To meet their pleading burden, Drs. Kory and Marik were required to allege facts plausibly suggesting that ABIM *was* involved in those publications, not simply assert that discovery might reveal such involvement. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also Smith v. Textile Rental Servs. Ass'n*, NO. 3:20-CV-3178-B, 2021 WL 3565578, at *4 (N.D. Tex. Aug. 12, 2021) (dismissing defamation claim where plaintiff failed to adequately alleged that defendant was publisher of statements at issue). They did not do so.

*Protected Opinion*: Drs. Kory and Marik fare no better with respect to application of the opinion doctrine. They do not dispute that, under that doctrine, disagreements over matters of science and medicine, including disputes over the treating and preventing COVID-19, are not proper subjects for defamation lawsuits. *See* Init. Mem. at 27-28 (citing cases). Nor do they dispute that their purported defamation claims are premised on precisely such a dispute. *See, e.g.*, Opp. at 27 (asserting they were defamed by purported implication that medical evidence does not support their COVID-19 views). Instead, they assert that this case is somehow different than the cases articulating and applying that doctrine because ABIM is not a news organization. *Id.* at 29. Drs. Kory and Marik cite nothing to suggest that that fact should make a difference in application of the governing

law. It does not.

*No Actual Malice*: Finally, the defamation claim also fails for failure to adequately allege actual malice. While Drs. Kory and Marik appropriately concede they are limited-purpose public figures who must actually plead actual malice to state a defamation claim, *see id.* at 30, they are wrong in asserting that they have done so. All they point to is their allegation "that the action taken [by ABIM] was not a good faith assessment of whether their views about COVID were so unfounded as to violate the actual published ABIM standards." *Id.* Such a conclusory assertion is insufficient to plead actual malice. *See, e.g.*, *Turner v. Wells*, 879 F.3d 1254, 1273-74 (11th Cir. 2018) (public-figure plaintiff's conclusory allegations of actual malice were insufficient to state claim); *Davis v. Jones*, NO. 5:23-CV-00032-RWS, 2024 WL 2707952, at *6 (E.D. Tex. Mar. 13, 2024) (same); *Malone v. WP Co. LLC*, No. 3:22-cv-00046, 2023 WL 6447311, at *5 (W.D. Va. Sept. 29, 2023) (same).

### III.   CONCLUSION

For all the reasons discussed above and in ABIM's Initial Memorandum, the Court should dismiss the Amended Complaint with prejudice and grant ABIM such other and further relief that the Court deems just and proper.

Dated: April 11, 2025

Respectfully submitted,

BALLARD SPAHR LLP

*/s/ Paul Lantieri III*
Paul Lantieri III (admitted *pro hac vice*)
lantierip@ballardspahr.com
Jason A. Leckerman (admitted *pro hac vice*)
LeckermanJ@ballardspahr.com
Elizabeth Weissert (admitted *pro hac vice*)
WeissertE@ballardspahr.com
1735 Market Street, 51st Floor
Philadelphia, Pennsylvania 19103
Tel. 215.665.8500
Fax 215.864.8999

GERGER HENNESSY &MARTIN LLP

*/s/ David Gerger*
David Gerger
State Bar No. 07816360
Federal Bar ID 10078
dgerger@ghmfirm.com
700 Louisiana, Suite 2300
Houston, Texas 77002
Tel. 713.224.4400

*Attorneys for Defendant*
*American Board of Internal Medicine*

## CERTIFICATE OF SERVICE

I hereby certify that on this day of April 11, 2025, a true and accurate copy of the foregoing document was filed electronically (via CM/ECF).

*/s/ Paul Lantieri III*
Paul Lantieri III
