# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## GALVESTON DIVISION

ASSOCIATION OF AMERICAN )
PHYSICIANS AND SURGEONS )
EDUCATIONAL FOUNDATION, )
PIERRE KORY, M.D., PAUL MARIK, M.D., )
and KARL N. HANSON, M.D., )
                 )
        Plaintiffs, )
                 )    Case No. 3:22-cv-240
        v. )
                 )
AMERICAN BOARD OF INTERNAL )
MEDICINE, AMERICAN BOARD OF )
OBSTETRICS & GYNECOLOGY, )
AMERICAN BOARD OF FAMILY )
MEDICINE, and KRISTI NOEM, in her )
official capacity as the Secretary of the U.S. )
Department of Homeland Security, )
                 )
        Defendants. )
                 )

## **PLAINTIFFS' OPPOSITION TO KRISTI NOEM'S MOTION TO DISMISS**

Andrew L. Schlafly
Attorney-in-charge
State of New Jersey Bar ID 04066-2003
SD Texas Bar ID NJ04066
939 Old Chester Rd.
Far Hills, NJ 07931
Tel: 908-719-8608
Fax: 908-934-9207
Email: aschlafly@aol.com

*Counsel for Plaintiffs Association of American Physicians and Surgeons*
*Educational Foundation, Pierre Kory, Paul Marik, and Karl. N. Hanson*

# TABLE OF CONTENTS

**Pages**

Table of Contents................................................................................................. ii

Table of Authorities............................................................................................ iii

Nature and Stage of Proceedings.......................................................................... 1

Statement of Facts ............................................................................................... 2

Procedural Background ........................................................................................ 8

Summary of Argument ......................................................................................... 9

Legal Standard.................................................................................................... 11

Argument ............................................................................................................ 11

I.      Plaintiffs' Claims Against the Government Are Not Moot................................... 11

      A. Plaintiffs' FACA Claim Is Not Moot ............................................................. 12

      B. Plaintiffs' First Amendment Claim Is Not Moot ............................................. 13

II.     Plaintiffs Have Standing to Assert Their Claims Against the Government .......... 14

      A. Plaintiffs Have Standing on Their FACA Claim (Count II) ............................ 15

      B. Plaintiffs Have Standing on Their First Amendment Claim (Count I) ............. 16

III.    Plaintiffs' FACA Claim for Lack of Balance in the Government Committees
      Is Fully Justiciable.......................................................................................... 21

Conclusion ......................................................................................................... 21

Certificate of Compliance .................................................................................. 22

Certificate of Service ......................................................................................... 22

## TABLE OF AUTHORITIES

**Pages**

### Cases

*Ass'n of Am. Physicians & Surgeons Educ. Found. v. Am. Bd. of Internal Med.*,
103 F.4th 383 (5th Cir. 2024) ................................................................... 6, 9

*Ateres Bais Yaakov Acad. of Rockland v. Town of Clarkstown*,
88 F.4th 344 (2d Cir. 2023) ......................................................................... 19

*Byrd v. United States EPA*, 174 F.3d 239 (D.C. Cir. 1999) ....................... 12, 16

*Cargill, Inc. v. United States*, 173 F.3d 323 (5th Cir. 1999) ........................... 21

*Carter v. HealthPort Techs., LLC*, 822 F.3d 47 (2d Cir. 2016) .............. 11, 19

*Changizi v. HHS*, 82 F.4th 492 (6th Cir. 2023) ............................................ 18

*Consortium for Indep. Journalism, Inc. v. United States*,
2025 U.S. Dist. LEXIS 55654 (S.D.N.Y. Mar. 26, 2025) ........................... 14

*Cummock v. Gore*, 180 F.3d 282 (D.C. Cir. 1999) ......................................... 12

*DOC v. New York*, 588 U.S. 752, 139 S. Ct. 2551 (2019) .............................. 19

*Eccles v. Peoples Bank of Lakewood Vill.*, 333 U.S. 426 (1948) ................. 17

*Food Chem. News v. Department of Health & Human Servs.*,
980 F.2d 1468 (D.C. Cir. 1992) ................................................................. 16

*FTC v. Seismic Entm't Prods.*, No. 04-377-JD,
2005 U.S. Dist. LEXIS 21899 (D.N.H. Sep. 22, 2005) ............................... 20

*Grace v. Apple Inc.*, No. 17-CV-00551, 2017 U.S. Dist. LEXIS 119109
(N.D. Cal. July 28, 2017) ........................................................................... 15

*Hart v. Facebook, Inc.*, No. 22-cv-00737,
2022 WL 1427507 (N.D. Cal. May 5, 2022),
*aff'd*, No. 23-15858, 2024 WL 1693355 (9th Cir. 2024) ........................... 19

*Judicial Watch, Inc. v. Nat'l Energy Policy Dev. Group*,
219 F. Supp. 2d 20 (D.D.C. 2002), *aff'd sub nom.*, *In re Cheney*,
334 F.3d 1096 (D.C. Cir. 2003), *rev'd on other gnds.*, 542 U.S. 367 (2004) ............. 12

*Murthy v. Missouri*, 603 U.S. 43 (2024) ...................................................... 20

*Nat'l Anti-Hunger Coal. v. Exec. Comm. of President's Private Sector Survey on
Cost Control*, 711 F.2d 1071 (1983) .................................................... 15, 21

*Norris v. Hearst Tr.*, 500 F.3d 454 (5th Cir. 2007) ....................................... 11

*Nw. Ecosystem All. v. Office of the United States Trade Representative*,
No. C99-1165R, 1999 U.S. Dist. LEXIS 21689 (W.D. Wash. Nov. 8, 1999) ........... 10

*Public Citizen v. National Advisory Committee on Microbiological Criteria for Foods*, 886 F.2d 419 (D.C. Cir. 1989) ...................................................................... 21

*Public Citizen v. U.S. Dep't of Just.*, 491 U.S. 440 (1989) ................................. 9, 15, 16

*Rothstein v. UBS AG*, 708 F.3d 82 (2d Cir. 2013) ............................................................. 19

*Soc'y of lists, Inc. v. Herman*, 959 F.2d 1283 (5th Cir. 1992) .......................................... 17

*TransUnion LLC v. Ramirez*, 594 U.S. 413 (2021) ........................................................... 17

**Statute, Executive Order, and Rule**

Federal Advisory Committee Act (FACA), 5 U.S.C. app. 2 §§ 1-16 ......................................... 1
5 U.S.C. app. 2 § 5(b)(2) ............................................................................................................ 3

Executive Order 14,149, "Restoring Freedom of Speech and Ending Federal Censorship," 90 Fed. Reg. 8243, 2025 WL 244197 (Jan. 20, 2025) .......................... 13

FED. R. CIV. P. 12(b)(6) ....................................................................................................... 11

**Other Authorities**

Erika L. LeBaron, *Hope*, 30 *Journal of American Physicians and Surgeons* 17 (2025) .. 13

DHS Needs a Unified Strategy to Counter Disinformation Campaigns,
No. OIG-22-58, DHS Inspector General (Aug. 10, 2022) ............................................. 6

Homeland Security Advisory Council Disinformation Best Practices
and Safeguards Subcommittee Final Report (August 24, 2022)
("*Subcommittee Final Report*")
https://perma.cc/M9H6-C6XX .............................................................. 5, 6, 7, 14, 18

Homeland Security Press Release, "Following HSAC Recommendation, DHS
terminates Disinformation Governance Board" (Aug. 24, 2022)
("*DHS Press Release*")
https://www.dhs.gov/news/2022/08/24/following-hsac-recommendation-dhs-
terminates-disinformation-governance-board ........................................................... 2, 6

United States Department of Homeland Security, Homeland Security Advisory
Council Charter ("*HSAC Charter*")
https://www.dhs.gov/sites/default/files/2025-03/25_0305_hsac_charter.pdf ....... 3, 4, 5

Plaintiffs Association of American Physicians and Surgeons Educational Foundation ("AAPS"), Pierre Kory, M.D. ("Kory"), and Paul Marik, M.D. ("Marik"), Karl N. Hanson, M.D. ("Hanson") hereby file their opposition to Defendant Kristi Noem's Motion to Dismiss Amended Complaint (Dkt. 75). Kristi Noem ("Noem") is being sued here only in her official capacity as the Secretary of the U.S. Department of Homeland Security ("DHS" or "government").

## NATURE AND STAGE OF PROCEEDINGS

This is a challenge to attempts by the federal government to control or regulate speech as though necessary to protect a supposedly too-gullible public against so-called "misinformation" and "disinformation", based on a unproven theory that the public cannot decide for itself what should be believed. Government thereby causes the censorship of information that is disfavored by the powers-that-be. This governmental interference with freedom of speech constitutes viewpoint-discrimination in violation of the First Amendment of the U.S. Constitution.

Unlike lawsuits against government censorship elsewhere, this case concerns the government's violation of the Federal Advisory Committee Act (FACA), 5 U.S.C. app. 2 §§ 1-16, which requires transparency and balance on committees comprised of private-sector members who advise federal agencies. The government admits that its Homeland Security Advisory Council (HSAC) at issue here is required to comply with FACA, and Plaintiffs allege that its relevant subcommittee is also subject to FACA. Neither of these committees have fully complied with FACA's transparency and balance requirements.

1

The government has moved to dismiss based on mootness and standing, while conceding that Plaintiffs have standing for part of their FACA claim. (Govt Mot. 20) This concession by the government provides one of several grounds for denying its motion.

## STATEMENT OF FACTS

DHS typically follows the recommendations of its Homeland Security Advisory Council (HSAC) concerning what HSAC considers to be misinformation and disinformation on the internet and elsewhere. (Dkt. 66, Am. Compl. ¶ 81) In connection with its disbanding of the Disinformation Governance Board (DGB), DHS declared on August 24, 2022, as follows:

> Statement from the Department of Homeland Security following the recommendation from the Homeland Security Advisory Council regarding the Disinformation Governance Board:
>
> > "The Department welcomes the recommendations of the Homeland Security Advisory Council, which has concluded that countering disinformation that threatens the homeland, and providing the public with accurate information in response, is critical to fulfilling the Department's missions. …."

(*Id.* ¶ 82, quoting and citing Homeland Security Press Release, "Following HSAC Recommendation, DHS terminates Disinformation Governance Board" (Aug. 24, 2022), hereinafter, "*DHS Press Release*").[1]

According to its charter, the "HSAC shall be composed of not more than 40 members who are appointed by and serve at the pleasure of the Secretary," currently

---

[1] https://www.dhs.gov/news/2022/08/24/following-hsac-recommendation-dhs-terminates-disinformation-governance-board (viewed April 17, 2025).

Defendant Noem. (Am. Compl. ¶ 83, quoting and citing United States Department of Homeland Security, Homeland Security Advisory Council Charter (hereinafter, "*HSAC Charter*," p. 3 ¶ 12).[2] The members of HSAC serve as Special Government Employees, a term defined in 18 U.S.C. § 202(a), and are employed entirely or nearly entirely in the private sector including nonprofit organizations. (*Id.* ¶ 84, citing *HSAC Charter* at 3 ¶ 12)

HSAC "is established in accordance with and operates under the provisions of the *Federal Advisory Committee Act* (FACA), Title 5 United States Code, Appendix," and thus is fully subject to the requirements of FACA. (Am. Compl. ¶ 85, quoting *HSAC Charter* at 1 ¶ 2, emphasis in original). In what is known as its "fair balance provision," FACA requires that "the membership of [any] advisory committee … be fairly balanced in terms of the points of view represented and the functions to be performed by the advisory committee." (Am. Compl. ¶ 86, quoting 5 U.S.C. app. 2 § 5(b)(2)).

There are currently 32 members of the HSAC, none of whom represents a pro-First Amendment point-of-view that stands against government-induced censorship. (Am. Compl. ¶ 87) For example, there no members of HSAC who represent the media, alternative media, religious organizations, social media influencers, bloggers, vocal supporters of Elon Musk or Robert F. Kennedy, Jr., or other advocates of freedom of speech without government censorship. (*Id.*) Similarly, among HSAC's current 32-person membership there is not a single member who is an identifiable political conservative, critic

---

[2] https://www.dhs.gov/sites/default/files/2025-03/25_0305_hsac_charter.pdf (viewed April 17, 2025).

of overreach by the federal government, vocal supporter of Donald Trump, or advocate for less government. (*Id.* ¶ 88) Geographically, the Southern and Midwestern regions of the United States are severely underrepresented on the 32-person membership of HSAC, while instead most of the current members have ongoing, substantial connections with Washington, D.C. (*Id.* ¶ 89) The HSAC is predominantly comprised of former government officials, corporate executives, current or former partners of large law firms, political liberals, and others who have no meaningful background in the First Amendment right of freedom of speech, or advocacy of this right. (*Id.* ¶ 90)

The charter of HSAC enumerates these permissible backgrounds for its membership:

> Police, fire, emergency medical services and public works;
> Public health and hospital managers;
> State, local, and tribal officials;
> National policy makers;
> Experts in academia and the research community;
> Leaders from the private sector;
> Owners and operators of critical industries, resources, and infrastructure.

(*Id.* ¶ 91, quoting *HSAC Charter*, p. 3 ¶ 12) Nothing on this list includes or even allows meaningful experience, expertise, or advocacy in First Amendment and other civil rights or on the need for a full range of views on the scientific merits of public policy issues to be represented. (Am. Compl. ¶ 92) Instead, the membership of HSAC is entirely on the side of (or indifferent to) censorship by government on social media and the internet. (*Id.* ¶ 93) None of the members of HSAC is required or likely to have meaningful experience with freedom of speech rights, problems caused by government censorship on social media and

4

the internet, or various approaches for addressing public misinformation or disinformation. (*Id.*) Indeed, the *HSAC Charter* fails to require or accommodate protection of Americans' First Amendment rights of freedom of speech and religion, or other civil rights, in any way. (*Id.* ¶ 94)

The HSAC appointed a subcommittee (the "Subcommittee") that was comprised of six members. Two of them – fully one-third of this Subcommittee – were at the time attorneys at the very same law firm of Wilmer Cutler Pickering Hale and Dorr, LLP, in its same Washington, D.C., office. (*Id.* ¶ 95, citing the *Subcommittee Final Report*, pp. 26-28)[3] The other four members of the Subcommittee were (1) a senior counsel to another D.C.-based law firm, Covington Burlington, (2) a partner at a West Coast venture capital firm, (3) an executive at United Way Worldwide who previously worked at the Treasury Department and then Goldman Sachs, and (4) the founder and CEO of an international security consultant firm based in New York City. (*Id.* ¶ 96) This Subcommittee lacked balance for all the foregoing reasons that the HSAC lacked the requisite balance under FACA. (*Id.* ¶ 97) The Subcommittee did not comply with any of the transparency and other requirements of FACA. (*Id.* ¶ 98)

The Subcommittee issued its report on August 24, 2022 – the same day that then-DHS Secretary Mayorkas, immediately thereafter, made and announced his decision to disband the DGB. (*Id.* ¶ 99) The *Subcommittee Final Report*, on which Mayorkas relied in

---

[3] https://perma.cc/M9H6-C6XX (viewed April 17, 2025).

making his decision to disband DGB, called for DHS to develop "a more strategic approach

to disinformation," such that "DHS 'develop a unified strategy to counter disinformation

campaigns that appear in social media.'" (*Id.* ¶ 100, quoting *Subcommittee Final Report* at

6 & n.1, citing DHS Needs a Unified Strategy to Counter Disinformation Campaigns, No.

OIG-22-58, DHS Inspector General (Aug. 10, 2022)).

> The *Subcommittee Final Report* stated that:
>
> We previously recommended to the full Council—and the Council has accepted our recommendation—that there is no need for a separate Disinformation Governance Board. But it is our assessment that the underlying work of Department components on this issue is critical. …
>
> Apart from [DHS's] public rebuttals, the Department can and should also bring such disinformation to the attention of other government agencies for appropriate action and to platforms hosting the falsehoods.

(Am. Compl. ¶ 101, quoting *Subcommittee Final Report* at 12, 13, emphasis added))

On August 24, 2022, while terminating the DGB, Mayorkas vowed to "continue to

address threat streams that undermine the security of our country consistent with the law,

while upholding the privacy, civil rights, and civil liberties of the American people and

promoting transparency in our work." (Am. Compl. ¶ 101, quoting the *DHS Press Release*)

But DHS has refused to promise not to reinstate the DGB, whether in the same name or

otherwise. (*Id.* ¶ 102) In response to a question about this on appeal in this case – which

becomes the law of this case – DHS has "refused to assure us that the Department would

neither reconstitute the [Disinformation Governance] Board nor replicate its functions

through other means." (*Id.* ¶ 103, quoting *Ass'n of Am. Physicians & Surgeons Educ.*

*Found. v. Am. Bd. of Internal Med.* [hereinafter, *AAPS v. ABIM*], 103 F.4th 383, 398 (5th

Cir. 2024) (citing Oral Argument at 17:43-18:37)).

In disbanding the DGB, Mayorkas adopted the position "that there is no need for a separate Disinformation Governance Board. But it is our assessment that the underlying work of Department components on this issue is critical." (Am. Compl. ¶ 104, quoting *Subcommittee Final Report* at 12, emphasis added). The timing of Mayorkas's final decision in disbanding the Disinformation Governance Board was immediately following the recommendation of the **Subcommittee** of HSAC, rather than a recommendation by HSAC itself. (*Id.* ¶ 105) This process of the Subcommittee advising Mayorkas brought the Subcommittee within the scope of FACA and its requirements because the **Subcommittee directly advised the then-Secretary of DHS**, Mayorkas. (*Id.*) Yet the Subcommittee failed to comply with any of the requirements of FACA for balance, transparency, or on any other issue. (*Id.* ¶ 106)

The censorship work planned for the DGB did not cease but has simply continued in a dispersed manner among employees of DHS and other federal agencies. (*Id.* ¶ 107) The government has been misusing its power and authority to discriminate based on viewpoint, and thereby cause a chilling effect on freedom of speech. (*Id.* ¶ 148) The public statements by the Board Defendants (ABIM, ABOG, and ABFM) on multiple controversial issues were in lockstep agreement with that of the Biden Administration. (*Id.* ¶ 150-52) The government has failed to carve out clearly protected speech, such as criticism of public figures or legitimate debate in the public interest, and has not refrained from demanding censorship of such speech. (*Id.* ¶ 153)

By its foregoing actions, the government and the Board Defendants cause injury to Plaintiff AAPS in the form of a decrease in attendance at its conferences and in donations to it. (*Id.* ¶ 154) The Board Defendants have communicated and worked with federal agency officials, seeking to advance a particular partisan agenda on issues relevant to this case. (*Id.* ¶ 159) The Board Defendants impose their censorship as alleged herein either at the partisan request of federal agency officials and Democrats in Congress, or in the expectation of obtaining favoritism from them as a result. (*Id.* ¶ 160) The nearly simultaneous public announcements and sending of threatening letters by the Board Defendants, often using similar terminology, is part of a broader campaign by and with federal agency officials to advance their particular partisan agenda concerning COVID-19 and abortion. (*Id.* ¶ 161)

The government's conduct as alleged herein has an intentionally chilling effect on speech, and thereby infringes on the First Amendment's protection of freedom of speech by Plaintiffs. (*Id.* ¶ 164) Plaintiffs seek an injunction against Defendants' retaliation against physicians who speak out on matters of public concern, which is in violation of Plaintiffs' First Amendment rights. (*Id.* ¶ 166) Plaintiffs seek a declaratory judgment that Defendants' foregoing conduct is unconstitutional. (*Id.* ¶ 167)

## PROCEDURAL BACKGROUND

Plaintiff AAPS filed its Complaint on July 12, 2022 (Dkt. 1); Defendants subsequently filed their motions to dismiss on September 26 and 27, 2022 (Dkt. 20-23); and on May 23, 2023, this Court issued its Opinion and Order granting the government's

motion to dismiss, and denied leave to Plaintiffs to amend. (Dkt. 43) Plaintiff AAPS timely appealed on July 13, 2023. (Dkt. 45)

On June 3, 2024, the U.S. Court of Appeals for the Fifth Circuit reversed the denial of leave to amend to add the government back into this lawsuit after this Court's initial granting of its motion to dismiss. *AAPS v. ABIM*, 103 F.4th at 395 ("The District Court should have given AAPS a chance to amend."). In dissent to affirming the initial dismissal of the government from this lawsuit, Judge Ho wrote:

> the subcommittee issued its final report, concluding that there was "no need for a separate ... [b]oard" to support the Department's "underlying work of ... address[ing] disinformation threat streams." The subcommittee also emphasized the need for "a more strategic approach to disinformation" and for the Department to "develop a unified strategy to counter disinformation campaigns that appear in social media."

*Id.* at 398 (Ho, J., dissenting). Judge Ho added:

> the association contended that dissolution of the Board did not terminate the government's campaign of censorship against disfavored viewpoints. To the contrary, the association alleged that the Department was simply dispersing the Board's intended functions to others, citing among other things the subcommittee's final report.
>
> The district court refused to allow the association to proceed on these theories. The majority rightly concludes that the district court's refusal was erroneous, and that the association will have leave to amend.

*Id.* at 399 (Ho, J., dissenting).

## SUMMARY OF ARGUMENT

The government admits that FACA applies here, and concedes on the last page of its motion to dismiss that Plaintiffs have standing to sue under it based on the Supreme Court decision in *Public Citizen v. U.S. Dep't of Just.*, 491 U.S. 440, 450 (1989). (Govt

Mot. 20 n.16) The government argues that "Plaintiffs lack standing to bring **nearly all** of their FACA claims" (emphasis added), which means Plaintiffs **do** have standing to bring **at least part** of their FACA claim of which there is only one asserted (Count II). Accordingly, Plaintiffs have standing for Count II. This FACA claim is not moot because the lack of balance on the relevant DHS committee persists and, although the Disinformation Governance Board has disbanded, the documents that need to be disclosed continue to exist. Hence the government continues to violate both the balance and transparency requirements of FACA, for which Plaintiffs have standing to challenge.

Both the committee and subcommittee at issue here in DHS lack the fair viewpoint balance required by FACA, and "[t]he Fifth and D.C. Circuits found that FACA fair balance challenges to committee membership are justiciable." *Nw. Ecosystem All. v. Office of the United States Trade Representative*, No. C99-1165R, 1999 U.S. Dist. LEXIS 21689, at *10 (W.D. Wash. Nov. 8, 1999) (citations omitted). In addition, the FACA-required transparency as to the subcommittee has not been followed. (Dkt. 66, Am. Compl. ¶¶ 98, 106)

Plaintiffs have standing to assert their First Amendment claim (Count I), and it is not moot. Standing exists because relief sought by Plaintiffs against the government would facilitate full relief against the Board Defendants for infringing on First Amendment rights. It is not necessary for standing, as the government argues, that Plaintiffs' requested relief against the government be a complete remedy. The requirement of standing is satisfied where, as here, the harm to Plaintiffs by the government is indirect and *"after intervening*

conduct by another person." *Carter v. HealthPort Techs.*, quoted *infra* Point II.B. Plaintiffs need relief against the government to facilitate and reinforce Plaintiffs' requested relief against the Board Defendants, or else the latter would be stuck between a proverbial rock and hard place. As to the government's mootness argument, Plaintiffs' First Amendment claim is not moot because when the DGB disbanded it simply dispersed its censorship work throughout DHS, and Defendant Noem has not disavowed and terminated these ongoing attempts to censor so-called misinformation and disinformation.

## LEGAL STANDARD

Plaintiffs adopt the government's statement of the legal standard, but the Court can also take notice of relevant public statements by the government. *See, e.g.*, *Norris v. Hearst Tr.*, 500 F.3d 454, 461 n.9 (5th Cir. 2007) ("[I]t is clearly proper in deciding a 12(b)(6) motion to take judicial notice of matters of public record.").

## ARGUMENT

### I.    Plaintiffs' Claims Against the Government Are Not Moot.

The government argues at length that the claims against it should be dismissed as moot, because it has disbanded its Disinformation Governance Board. (Govt Mot. 8-13) "Because the Board no longer exists, there is no longer a live case or controversy regarding the First Amendment claim," the government insists. (Govt Mot. 8) As to Plaintiffs' FACA claim, the government argues it is moot because "HSAC has already provided its recommendation concerning the Board—that the Board is unnecessary and should be disbanded—and the Secretary has acted on that advice and disbanded the Board." (*Id.* 9)

11

But the Amended Complaint was filed after that disbanding of the Disinformation Governance Board, involving far more than the DGB itself, and thus Plaintiffs' allegations of violations of the First Amendment and FACA are not moot.

### A.    Plaintiffs' FACA Claim Is Not Moot.

The lack of mootness of Plaintiffs' FACA claim is clearcut, under multiple precedents from the D.C. Circuit which has the most experience applying this law: "FACA rights are enforceable *even after an advisory committee has been disbanded*." *Cummock v. Gore*, 180 F.3d 282, 292 (D.C. Cir. 1999) (emphasis added, citing *Byrd v. United States EPA*, 174 F.3d 239, 243-44 (D.C. Cir. 1999)). The issue is not the continued existence of the Commission, but the continued existence of the documents governed by FACA. *See Judicial Watch, Inc. v. Nat'l Energy Policy Dev. Group*, 219 F. Supp. 2d 20, 30 (D.D.C. 2002) ("The federal government's statutory duty under FACA to allow the public to inspect and copy documents may be limited in time by the statute, but the ability of a court to award access to the documents as relief for previous violations of that duty *is limited only by the existence of the documents*.") (emphasis added), *aff'd sub nom.*, *In re Cheney*, 357 U.S. App. D.C. 274, 334 F.3d 1096 (D.C. Cir. 2003), *rev'd on other gnds.*, 542 U.S. 367 (2004).

The government does not argue that the documents associated with the forming and then disbanding of the Disinformation Governance Board (DGB) have ceased to exist. Moreover, the lack of balance in the membership of the HSAC, which the government concedes is fully subject to FACA, continues on. (Dkt. 66, Am. Compl. ¶¶ 86-97) Thus

under the above precedents and those requiring FACA balance, Plaintiffs' FACA claim is not moot.

**B.    Plaintiffs' First Amendment Claim Is Not Moot.**

The government asserts that there cannot be any ongoing First Amendment violation because the DGB has disbanded and because one of more than 100 executive orders already signed by President Trump disfavored censorship activities during his administration. Executive Order 14,149, "Restoring Freedom of Speech and Ending Federal Censorship," 90 Fed. Reg. 8243, 2025 WL 244197 (Jan. 20, 2025) (repeatedly cited by Defs. Mot. 1, 4, 12). The government argues that the change in administrations sharply reduces the likelihood of future censorship, citing a district court case in New York discussed below and an editorial in the *Journal of American Physicians & Surgeons.* Erika L. LeBaron, *Hope*, 30 *Journal of American Physicians and Surgeons* 17, 17 (2025) (welcoming the Trump Administration, with the article title "Hope") (cited by Govt Mot. 12-13).

But the above-cited Executive Order by President Trump as signed on Inauguration Day does not specifically refer to the Department of Homeland Security, and merely states in general terms that "no Federal Government officer, employee, or agent engages in or facilitates any conduct that would unconstitutionally abridge the free speech of any American citizen." 90 FR 8243, 8243 (Sec. 2(b)). The government does not cite to anything subsequent to this executive order that suggests any application of it to the facts at issue in this case. Plaintiffs are objecting to censorship activities deep within the Department of Homeland Security, which has more than 200,000 employees. Without something that ties

13

this broad executive order to allegations in this case, it does not disprove the allegation that "the underlying work of Department components on this issue [remains] critical. … [T]he Department can and should also bring such disinformation to the attention of other government agencies for appropriate action and to platforms hosting the falsehoods." (Am. Compl. ¶ 101, quoting the *Subcommittee Final Report* at 12, 13, which the government fully adopted). The government will be allowed on summary judgment to present facts on this issue, but merely citing to an executive order having no specific connection to the allegations in this case is insufficient to justify dismissal.

The government's reliance on a district court decision in New York is unhelpful to it here. There an executive order "makes a similar contract — and similar conduct by the Government in the near future — less likely and, therefore, casts further doubt on the redressability of Plaintiff's injury." *Consortium for Indep. Journalism, Inc. v. United States*, 2025 U.S. Dist. LEXIS 55654, at *28 n.6 (S.D.N.Y. Mar. 26, 2025) (quoted in part by Govt Mot. 12) At issue there was whether the likelihood of the government entering into a future type of contract, which an executive order negated. No such contract is at issue here, and the government's reliance on a broad, overarching executive order here is not dispositive. *See also id.* at *35 ("the President's recent Executive Order on this topic does not alter the Court's analysis").

## II.     Plaintiffs Have Standing to Assert Their Claims Against the Government.

Plaintiffs have standing on both their First Amendment and FACA claims against the government.

14

## A.  Plaintiffs Have Standing on Their FACA Claim (Count II).

The government expressly concedes that Plaintiffs have standing under the informational part, based on Section 10(b), of their FACA claim: "The claim under section 10(b) of FACA is not subject to the requirement for a plaintiff to show injury-in-fact." (Govt Mot. 20 n.16, citing the U.S. Supreme Court precedent of *Public Citizen, supra*) Plaintiffs assert only one claim based on FACA, so this concession by the government based on the controlling Supreme Court precedent resolves the standing issue in favor of Plaintiffs. Moreover, as held by the D.C. Circuit prior to the *Public Citizen* decision, "we can find no distinction between requirements under § 5 and requirements under § 10 of the Act for purposes of standing." *Nat'l Anti-Hunger Coal. v. Exec. Comm. of President's Private Sector Survey on Cost Control*, 711 F.2d 1071, 1074 (1983) (inner quotations omitted). Plaintiffs' standing for one part of their FACA claim (under Section 10(b)) thereby supports standing for the entirety of their FACA claim.

The government cites no authority for a court to parse the standing issue for different aspects of the very same claim, for which the government concedes that standing exists for at least part of claim. *See, e.g.*, *Grace v. Apple Inc.*, No. 17-CV-00551, 2017 U.S. Dist. LEXIS 119109, at *32 (N.D. Cal. July 28, 2017) ("Apple's standing argument fails because it asks the Court to parse too finely Plaintiffs' allegations to determine standing ….") (inner quotation and citation omitted).

The D.C. Circuit, which handles most FACA cases, explained this as follows while finding standing for a plaintiff under circumstances similar to those here:

15

According to the Supreme Court, a refusal to provide information to which one is entitled under FACA constitutes a cognizable injury sufficient to establish Article III standing. *See Public Citizen*, 491 U.S. at 449 ("refusal to permit appellants to scrutinize [committee's] activities to the extent FACA allows constitutes a sufficiently distinct injury to provide standing to sue"). By denying Byrd timely access to the panel's written comments and pre-meeting notes, EPA directly caused his informational injury. EPA therefore can make no serious challenge to the injury and causation elements of Byrd's standing. *See Food Chem. News v. Department of Health & Human Servs.*, 299 U.S. App. D.C. 25, 980 F.2d 1468, 1469 (D.C. Cir. 1992) ("Whenever practicable, all [Federal Advisory Committee] materials must be available for public inspection and copying *before* or *on* the date of the advisory committee meeting to which they apply.") (emphasis added).

*Byrd v. United States EPA*, 174 F.3d 239, 243 (1999) (citations to the record omitted).

The foregoing decision found standing even though the committee at issue there had disbanded, rejecting the same argument made by the government here that disbanding of the Disinformation Governance Board would somehow negate standing:

EPA does question whether Byrd can meet the redressability prong. It first contends that declaratory relief will no longer redress Byrd's inability to obtain timely access to the panel's documents because they have since been made available and ***the panel has completed its work and been disbanded***. ... [D]eclaratory relief might well cause EPA to reevaluate and change peer review practices not in conformity with FACA. Accordingly, we conclude ***Byrd has standing to maintain his action***.

*Byrd v. United States EPA*, 174 F.3d at 243-44 (finding standing under FACA even though the committee was "disbanded") (emphasis added).

**B. Plaintiffs Have Standing on Their First Amendment Claim (Count I).**

Plaintiffs have standing on their First Amendment freedom of speech claim, and the government relies instead on precedents that did not involve freedom of speech at all. The government quotes a 30-year-old Fifth Circuit decision for the holding that "[e]specially where governmental action is involved, courts should not intervene unless the need for

equitable relief is clear, not remote or speculative." *Soc'y of Separationists, Inc. v. Herman*, 959 F.2d 1283, 1287 (5th Cir. 1992) (quoted by Govt Mot. 14, quoting *Eccles v. Peoples Bank of Lakewood Vill.*, 333 U.S. 426, 431 (1948),). As its caption suggests, the *Soc'y of Separationists* case was about an exercise of freedom of religion, specifically an assertion of a right not to take an oath or affirmation as part of voir dire. Plaintiffs here are not asking the court to "exercise general legal oversight of the Legislative and Executive Branches, or of private entities." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423–24 (2021) (cited by Govt. Mot. 14).

Given that the government must remain in this case based at least on Plaintiffs' FACA claim, it would be premature and potentially inefficient to dismiss Plaintiffs' First Amendment claim (Count I). Discovery on the FACA claim from the government, and from other Defendants on pending claims against them, could easily uncover additional evidence against the government on the First Amendment claim. Dismissing this claim now against the government could simply result in a future motion for leave to reassert this claim against the government based on the discovered information.

The government's motion to dismiss quotes multiple allegations in the Amended Complaint which, in fact, establish standing for Plaintiffs' First Amendment claims. (Govt. Mot. 15) But the government next baldly (and implausibly) asserts that the simultaneous censorship activities, using the government's terminology of "misinformation" and "disinformation", "are the result of the independent actions of the Non-Profit Defendants." (*Id.*) The government's factual assertion is contrary to the facts set forth in the Amended

Complaint, and inappropriate for the government to rely on for its motion to dismiss rather than later at the summary judgment stage. Notably, the government has already refused to comply with a straightforward document production request by Plaintiffs which could uncover information disproving the government's factual assertion about whether the other Defendants acted entirely independently of the government. (Dkt. 80) So while the government relies heavily on its self-serving factual assertion here, it simultaneously denies Plaintiffs access to information that could disprove its assertion. The government's unsupported factual assertion is an improper basis for its motion to dismiss, particularly when the government denies Plaintiffs the ability to rebut the assertion.

The government's cited authorities are unhelpful to it. In the Sixth Circuit case, Twitter users sued the government, but not Twitter itself, over the suspending of their accounts by Twitter, and the Sixth Circuit emphasized that:

> This opinion should be understood as dealing only with the particular case before us. The general concerns raised by the appellants here are not phantasmagorical, and on a different set of allegations might survive at the motion-to-dismiss stage.

*Changizi v. HHS*, 82 F.4th 492, 498 n.8 (6th Cir. 2023). That case lacked the admission by the government, as asserted here in the Amended Complaint, that:

> 104.    In disbanding the DGB, Mayorkas adopted the position "that there is no need for a separate Disinformation Governance Board. But it is our assessment that the underlying work of Department components on this issue is critical." *Subcommittee Final Report* at 12 (emphasis added). …

> 107.    The censorship work planned for the DGB did not cease but has simply continued in a dispersed manner among employees of DHS and other federal agencies.

18

(Dkt. 66, Am. Compl. ¶¶ 104, 107) Also, in the Sixth Circuit case Twitter already had a content-moderation policy prior to COVID, in contrast with how the retaliation against Plaintiffs is unprecedented here. Furthermore, social media platforms are not in "a highly regulated field" as the practice of medicine is (*id.* ¶ 58), and Plaintiffs have alleged here extensive entwinement by the Board Defendants with state actors in a manner that does not exist with companies that run social media platforms. (*Id.* ¶¶ 59-78, 148, 159-61) *See also Hart v. Facebook, Inc.*, No. 22-cv-00737, 2022 WL 1427507, at *10 (N.D. Cal. May 5, 2022) (this case is also distinguishable as a content-moderation case in the unregulated world of social media, in contrast with the highly regulated world of medicine), *aff'd*, No. 23-15858, 2024 WL 1693355 (9th Cir. 2024).

As the Second Circuit explained:

> We have been clear that the causal-connection element of Article III standing, which is the requirement that the plaintiff's injury be fairly traceable to the challenged action of the defendant and not the result of the independent action of some third party not before the court, does not create an onerous standard. *Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 55-56 (2d Cir. 2016) ("A defendant's conduct that injures a plaintiff but does so only indirectly, after intervening conduct by another person, may suffice for Article III standing."). It requires no more than *de facto* causality, a standard that is, of course, lower than for proximate causation. *Dep't of Com.*, 139 S. Ct. at 2566; *see also Rothstein v. UBS AG*, 708 F.3d 82, 92 (2d Cir. 2013) ("[F]or purposes of satisfying Article III's causation requirement, we are concerned with something *less than the concept of proximate cause*." (citation omitted)). …

> We conclude that these contentions plausibly allege that the Town Defendants' actions had a "predictable effect" on the decisions of relevant third parties ….

*Ateres Bais Yaakov Acad. of Rockland v. Town of Clarkstown*, 88 F.4th 344, 352-53 (2d Cir. 2023) (finding standing for Article III purposes).

There is redressability here, too, yet the government argues that "[n]o injunction against the Secretary could require the Non-Profit Defendants to rescind or modify their policies." (Govt Mot. 18) An injunction against the Secretary is necessary in order to obtain the relief sought against the Board Defendants, because otherwise the Board Defendants could be caught in the middle between what the government seeks in censorship and what the First Amendment requires. The test for redressability is not whether the requested relief would grant the full remedy, but whether it would constitute a partial and ancillary remedy for which additional relief is also required. *See, e.g.*, *FTC v. Seismic Entm't Prods.*, No. 04-377-JD, 2005 U.S. Dist. LEXIS 21899, at *3 (D.N.H. Sep. 22, 2005) (ancillary equitable relief is recognized to redress an injury).

The government misplaces reliance on *Murthy v. Missouri*, but this is not predominantly a social media-related case. Rather, this is a case about the government's violations of FACA, and about retaliation against physicians' board certifications. Moreover, the standing defects in *Murthy* included one plaintiff was suing over a social media posting not by himself, but by his brother. *See Murthy v. Missouri*, 603 U.S. 43, 64 (2024) ("It is unclear why Jim Hoft would have standing to sue for his brother's injury."). No such standing defects exist here, where in addition to the censorship injuring Plaintiff AAPS, "Defendants' conduct as alleged herein has infringed on the First Amendment's protection of freedom of speech by the Individual Plaintiffs such that they have been professionally harmed and lost opportunities, for which they seek monetary compensation." (Am. Comp. ¶ 165)

20

### III. Plaintiffs' FACA Claim for Lack of Balance in the Government Committees Is Fully Justiciable.

The Fifth and D.C. Circuits may disagree often today, but both Circuits agree that a FACA challenge to the ideological balance of a FACA committee is fully justiciable. *See Cargill, Inc. v. United States*, 173 F.3d 323, 334-36 (5th Cir. 1999); *Public Citizen v. National Advisory Committee on Microbiological Criteria for Foods*, 886 F.2d 419, 433 (D.C. Cir. 1989) (Edwards, J., concurring in part and dissenting in part) (referring to *National Anti-Hunger Coalition*'s description of standing and noting that "justiciability of claims under section 5 of FACA is thus not an open issue in this circuit").

The government does not contest this central point, and says very little about this key part of Plaintiffs' FACA claim. Indeed, in the government's entire motion to dismiss it does not mention "balance" even once. This issue alone requires allowing Plaintiffs' FACA claim to proceed against the government, because Plaintiffs have alleged the lack of the requisite FACA balance in detail. (Dkt. 66, Am. Compl. ¶¶ 86-97, 106, 174-75, 184)

### CONCLUSION

Plaintiffs respectfully request that Defendant Noem's motion to dismiss be denied in its entirety.

Dated: April 17, 2025

Respectfully submitted,

/s/ Andrew L. Schlafly
Andrew L. Schlafly
Attorney-in-charge
State of N.J. Bar ID 04066-2003
SD Texas Bar ID NJ04066
939 Old Chester Rd.
Far Hills, NJ 07931
Tel: 908-719-8608

21

Fax: 908-934-9207
Email: aschlafly@aol.com

Counsel for Plaintiffs Association of
American Physicians and Surgeons
Educational Foundation, Pierre Kory,
Paul Marik, and Karl N. Hanson

## CERTIFICATE OF COMPLIANCE

I hereby certify that this document uses size 13 Times New Roman font, and that its substantive body is 21 pages long.

## CERTIFICATE OF SERVICE

I hereby certify that on this day of April 17, 2025, I filed the foregoing document through operation of the Court's CM/ECF system, which I understand to cause service on all counsel of record for all the parties.

/s/ Andrew L. Schlafly
Andrew L. Schlafly
Counsel for Plaintiffs

22