United States District Court
Southern District of Texas
ENTERED
July 30, 2025
Nathan Ochsner, Clerk

# In the United States District Court for the Southern District of Texas

GALVESTON DIVISION

No. 3:22-cv-240

ASSOCIATION OF AMERICAN PHYSICIANS AND SURGEONS EDUCATIONAL FOUNDATION, *ET AL.*, *PLAINTIFFS*,

v.

AMERICAN BOARD OF INTERNAL MEDICINE, *ET AL.*, *DEFENDANTS*.

## MEMORANDUM OPINION AND ORDER

JEFFREY VINCENT BROWN, *UNITED STATES DISTRICT JUDGE*:

Before the court are three motions to dismiss the plaintiffs' amended complaint. Dkts. 71, 74–75. The first is a Rule 12(b)(6) motion by the American Board of Internal Medicine ("ABIM"). Dkt. 71. The second is a 12(b)(1) and (b)(6) motion by the American Board of Obstetrics & Gynecology ("ABOG"). Dkt. 74. The fourth motion is Department of Homeland Security Secretary Kristi Noem's, brought under Rule 12(b)(1). Dkt. 75. Finding that it lacks specific jurisdiction over ABIM, the court denies its motion to dismiss as moot, Dkt. 71, grants ABOG's motion in part and denies it in part, Dkt. 74, and grants Noem's motion, Dkt. 75.

## I. Background

Because the parties and the Fifth Circuit are familiar with the facts of this case, the court will recount them only as necessary to provide context to ruling on the defendants' post-remand motions to dismiss. The plaintiffs assert First Amendment, tortious-interference, and antitrust claims. Dkt. 66 at 41–45; 49–56. Against Noem, the plaintiffs bring First Amendment and Administrative Procedure Act claims. *Id.* at 41–47.

## II. Personal Jurisdiction

First and foremost, the court has an "obligation to assure itself of its own jurisdiction, sua sponte if necessary." *Elldakli v. Garland*, 64 F.4th 666, 669 (5th Cir. 2023), *cert. denied*, 144 S. Ct. 487 (2023) (quotation omitted). The American Board of Family Medicine ("ABFM"), another board-defendant in this case, challenged the court's specific jurisdiction in a separate motion to dismiss. Dkt. 72. Its motion was granted in the magistrate judge's memorandum and recommendation, which was then adopted by this court. Dkts. 94, 97. Given the similarities between the board-defendants, the court now questions its personal jurisdiction over ABIM and ABOG *sua sponte*.

Like ABFM, ABIM is an out-of-state defendant—it is based in Pennsylvania but certifies physicians nationwide once they pass its

multiple-choice examination. Dkt. 66 ¶ 17. Because it is "neither incorporated in Texas nor has its principal place of business here," only specific jurisdiction is at issue. *Ethridge v. Samsung SDI Co., Ltd.*, 137 F.4th 309, 314 (5th Cir. 2025). The plaintiffs claim the court has specific jurisdiction over ABIM because it "does business in Texas by certifying and taking disciplinary actions against physicians here, in collusion with" other board-defendants. Dkt. 66 ¶ 17. But for the reasons articulated in the magistrate judge's memorandum and recommendation, this is simply not enough to establish specific jurisdiction. *See* Dkt. 94 (plaintiff's jurisdictional argument "focuses[] not on AB[I]M's contacts with Texas, but on the effects of AB[I]M's conduct that, while incidentally felt in Texas, were likely also felt in the other 49 states in which AB[I]M certifies physicians"). Accordingly, the court dismisses the plaintiffs' claims against ABIM for lack of personal jurisdiction. ABIM's motion to dismiss is denied as moot. Dkt. 71.

Next, ABOG. Unlike ABFM and ABIM, ABOG is headquartered and based in Texas. Dkt. 66 ¶ 18. The court therefore has general jurisdiction over ABOG and can resolve the merits of its motion to dismiss. *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014) ("With respect to a corporation, the place of incorporation and principal place of business are paradigm . . . bases for general jurisdiction.") (internal quotation marks and alterations omitted);

*Ethridge*, 137 F.4th at 315. Accordingly, the court now turns to ABOG and Noem's motions under 12(b)(1) and 12(b)(6).

## III. Legal Standards

### A. Rule 12(b)(1)

A court should grant a Rule 12(b)(1) motion to dismiss for lack of subject-matter jurisdiction if the court "lacks the statutory or constitutional power to adjudicate the case." *Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998). Here, "standing is challenged on the basis of the pleadings," so the court "accept[s] as true all material allegations of the complaint and construe[s] the complaint in favor of the complaining party." *Ass'n of Am. Physicians & Surgeons, Inc. v. Texas Med. Bd.*, 627 F.3d 547, 550 (5th Cir. 2010) (cleaned up).

"Under Article III of the Constitution, federal courts may adjudicate only actual, ongoing cases or controversies" and do not have "the power 'to decide questions that cannot affect the rights of litigants in the case before them.'" *Lewis v. Cont'l Bank Corp.*, 494 U.S. 472, 477 (1990) (quoting *North Carolina v. Rice*, 404 U.S. 244, 246 (1971)). "To qualify as a case fit for federal-court adjudication, 'an actual controversy must be extant at all stages of review, not merely at the time the complaint is filed.'" *Arizonans for Off. Eng. v. Arizona*, 520 U.S. 43, 67 (1997) (quoting *Preiser v. Newkirk*, 422

U.S. 395, 401 (1975)). "A case becomes moot—and therefore no longer a 'Case' or 'Controversy' for purposes of Article III—when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013) (quotation omitted).

**B. Rule 12(b)(6)**

To survive a motion to dismiss for failure to state a claim, a plaintiff must plead facts sufficient to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when the pleaded facts allow the court to reasonably infer that the defendant is liable for the alleged conduct. *Id.* In reviewing the pleadings, a court accepts all well-pleaded facts as true, "construing all reasonable inferences in the complaint in the light most favorable to the plaintiff." *White v. U.S. Corrs., L.L.C.*, 996 F.3d 302, 306–07 (5th Cir. 2021). But the court does not accept "[c]onclusory allegations, unwarranted factual inferences, or legal conclusions" as true. *Plotkin v. IP Axess Inc.*, 407 F.3d 690, 696 (5th Cir. 2005).

## IV. Analysis

### A. Lack of Subject-Matter Jurisdiction

ABOG and Noem filed motions to dismiss for lack of subject-matter jurisdiction under Rule 12(b)(1). The court will address each in turn.

#### 1. ABOG

As the only board-defendant still challenging the plaintiffs' standing, ABOG asserts the plaintiffs "do not plead an injury in fact to their own interests that is traceable and redressable." Dkt. 74 at 12. It elaborates that the "speculative" threat to revoke certain physicians' board certifications simply "*could* have the indirect effect of decreasing interest in AAPS events" and conferences. *Id.* at 14. But as the Fifth Circuit already made clear, "AAPS sufficiently alleges injury-in-fact, traceability, and redressability for its First Amendment claims against the [board-defendants], meaning it has standing to pursue those claims." *Ass'n of Am. Physicians & Surgeons Educ. Found. v. Am. Bd. of Internal Med.*, 103 F.4th 383, 393 (5th Cir. 2024). ABOG's 12(b)(1) motion to dismiss is denied.

#### 2. Secretary Noem

The Fifth Circuit affirmed this court's dismissal of claims against prior Homeland Security Secretary Alejandro Mayorkas but modified the dismissal to be "without prejudice" on remand. *Id.* at 395–96. The plaintiffs' amended complaint, now naming Secretary Noem, contends the injuries

caused by Mayorkas at the time he created the Disinformation Governance Board continues to "cause ongoing and irreparable harm to [the plaintiffs], because Mayorkas's final agency actions [were] without compliance with FACA[1] [and] cannot be adequately remedied." Dkt. 66 ¶ 48. Noem argues the plaintiffs make the same claims against her as against Mayorkas and therefore those claims remain moot. Dkt. 75 at 14–15 (concluding from a redlined comparison of the original and amended complaint that the plaintiffs allege "no new forward-looking allegations or description of ongoing harm that would suggest a different outcome.").

The court agrees with Noem—the plaintiffs' amended complaint simply rehashes claims they made against the Department during the Biden Administration and alleges in a conclusory fashion that the Homeland Security Advisory Council's current political imbalance is an ongoing injury. Dkt. 66 ¶¶ 79–107, 169–184; *Ass'n of Am. Physicians & Surgeons Educ. Found.*, 103 F.4th at 395–96 (affirming that voluntary-cessation exception is not overcome). The court once again finds that AAPS's claims against the

[1] The Federal Advisory Committee Act ("FACA") provides transparency and balance standards for federal advisory committees. The plaintiffs specifically argue Mayorkas did not comply with its requirement that "legislation establishing, or authorizing the establishment of any advisory committee . . . require the membership of the advisory committee to be fairly balanced in terms of the points of view represented and the functions to be performed by the advisory committee." 5 U.S.C. § 1004(b)(2).

Department are moot and grants Noem's motion to dismiss without prejudice. Dkt. 75.

### B. Failure to State a Claim

ABOG also filed a motion to dismiss under Rule 12(b)(6), arguing the plaintiffs' constitutional, tortious-interference, and antitrust claims are not sufficiently pleaded. The court addresses each claim in turn.

#### 1. First Amendment Claims

The plaintiffs assert ABOG engaged in viewpoint discrimination by threatening to revoke certain physicians' board certifications for speaking critically about Covid lockdowns, mask mandates, the Covid vaccine, and abortion. Dkt. 66 ¶¶ 56, 147–168. ABOG argues the plaintiffs' First Amendment claim must be dismissed because its conduct is not state action. Dkt. 74 at 15–20. The plaintiffs counter that "ABOG's board certification . . . is a public function" because it "is tantamount to state medical licensure." Dkt. 77 at 20. They also emphasize the importance board certification holds when it comes to practicing medicine. Dkt. 66 ¶¶ 76–77 (observing that most hospitals and insurance networks require board certification); *see also id.* ¶ 72 (stating the Texas Legislature has "pointed to board certification as an essential consideration in weighing the

qualifications to testify as an expert"). The court finds that the plaintiffs have not sufficiently pleaded state action against ABOG.

There is "a line between state action subject to [constitutional] scrutiny and private conduct (however exceptionable) that is not." *Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 295 (2001). The state-action requirement ensures that "constitutional standards are invoked 'when it can be said that the State is *responsible* for the specific conduct of which the plaintiff complains.'" *Id.* (quoting *Blum v. Yaretsky*, 457 U.S. 991, 1004 (1982) (alteration in original)). The Fifth Circuit recognizes three tests for determining when a state is responsible for a private entity's conduct: (1) the public-function test, whereby a private entity "may be deemed a state actor when [it] performs a function which is traditionally the exclusive province of the state"; (2) the coercion test, which provides that a state is "responsible for a private decision only when it has exercised coercive power or has provided such significant encouragement, either overt or covert, that the choice must in law be deemed to be that of the State"; and (3) the joint-action test, which holds state action exists when "the government has so far insinuated itself into a position of interdependence with the [private actor] that it was a joint participant in the enterprise." *Bass v. Parkwood Hosp.*,

180 F.3d 234, 241–42 (5th Cir. 1999) (second alteration in original) (internal quotation marks omitted).

The plaintiffs have not sufficiently pleaded that ABOG is a state actor under these tests. Instead, the plaintiffs devote the bulk of their argument to stressing the importance of board certification in practicing medicine. Dkt. 66 ¶¶ 76–78. This is not enough to plausibly plead that ABOG *is* a state actor. Although many states undoubtedly attribute great significance to board certification,[2] that significance "does not alone render [ABOG's] decisions state action." *Bailey v. McCann*, 550 F.2d 1016, 1019 (5th Cir. 1977) (holding private-entity licensure being a "prerequisite for a valid Florida license" does not convert the private entity into a state actor). And no matter how many doors board certification opens for physicians, such as through greater hospital-staffing access or expanded insurance-network compatibility, ABOG still has "no power to issue the licenses which permit one to practice medicine in the State." *Id.* A state's adoption of a private board's standards "as part of a State regulatory scheme" is therefore "no more state action by

[2] Such significance is demonstrated through the Interstate Medical Licensure Compact, under which forty states have agreed to expedite the medical-licensure process for physicians who obtain board-certification. *See* Dkt. 66 ¶¶ 60–61; FAQS, INTERSTATE MED. LICENSURE COMPACT, https://imlcc.com/faqs/ (last visited July 30, 2025).

that organization than is the adoption of State regulations by a wholly private organization." *Id.*; *see also Sanjuan v. Am. Bd. of Psychiatry & Neurology, Inc.*, 40 F.3d 247, 250 (7th Cir. 1994), *as amended on denial of reh'g* (Jan. 11, 1995) (holding board certification being a prerequisite for certain public positions "does not convert the Board into a state actor" and "public beliefs that [a board's certification processes] *are* reliable . . . do not bestow governmental power on the Board"); *see also Am. Bd. of Internal Med. v. Von Muller*, No. 10-CV-2680, 2011 WL 857337, at *3–5 (E.D. Pa. Mar. 10, 2011), *aff'd* (Sept. 12, 2013) (acknowledging the importance of board certification but ultimately dismissing constitutional claim because ABIM is not a state actor).

Because the plaintiffs do not sufficiently plead the state delegated, coerced, or acted interdependently with ABOG, their First Amendment claims are dismissed.

**2. Tortious Interference**

The plaintiffs argue that ABOG's threats to revoke board certification tortiously interfered with speakers' participation in AAPS's medical conferences, its ability to gain donations, and its overall participation in the medical-conference marketplace. Dkt. 66 ¶¶ 109, 185–189. ABOG rebuts that the plaintiffs fail to supply any supporting facts that would allow a

tortious-interference claim to survive a motion to dismiss. Dkt. 74 at 20–22. The court agrees with ABOG.

Texas law recognizes two distinct tortious-interference causes of action: "[t]ortious interference with existing business relationships and tortious interference with prospective business relationships." *McGowan & Co., Inc. v. Bogan*, 93 F. Supp. 3d 624, 654 (S.D. Tex. 2015) (internal quotation marks omitted). Because the plaintiffs do not specify which tortious-interference cause of action they plead, the court will address both.

The plaintiffs have not stated a claim for tortious interference with an existing business relationship. The elements are "(1) unlawful actions undertaken without justification or excuse; (2) with intent to harm; (3) actual damages; and (4) the actions were motivated by malice." *Id.* at 655 (quoting *Apani Sw., Inc. v. Coca-Cola Enters., Inc.*, 300 F.3d 620, 634 (5th Cir. 2002)). To the extent the plaintiffs plead this claim, they do not allege with any specificity or supporting facts what "unlawful actions" ABOG undertook "without justification." *Apani Sw., Inc.*, 300 F.3d at 634. Although ABOG's actions and threats may have been flagrant or unwarranted, it is unclear how those actions were *unlawful*. *See Wal-Mart Stores, Inc. v. Sturges*, 52 S.W.3d 711, 726 (Tex. 2001) (plaintiff must prove

"defendant's conduct would be actionable under a recognized tort"). The court therefore has no option but to dismiss this claim.

The court reaches the same result on the plaintiffs' claim for tortious interference with a prospective business relationship. To plead this cause of action, the plaintiffs must show:

> (1) there was a reasonable probability that the plaintiff would have entered into a business relationship with a third party; (2) the defendant either acted with a conscious desire to prevent the relationship from occurring or knew the interference was certain or substantially certain to occur as a result of the conduct; (3) the defendant's conduct was independently tortious or unlawful; (4) the interference proximately caused the plaintiff injury; and (5) the plaintiff suffered actual damage or loss as a result.

*Coinmach Corp. v. Aspenwood Apartment Corp.*, 417 S.W.3d 909, 923 (Tex. 2013). The first element of "reasonable probability" is "sufficiently alleged when the plaintiff can describe the specifics of a proposed agreement that never came to fruition." *Corrosion Prevention Techs. LLC v. Hatle*, No. 4:20-CV-2201, 2020 WL 6202690, at *4 (S.D. Tex. Oct. 22, 2020). But because the amended complaint contains no such description, the court also dismisses this claim.

### 3. Sherman Act

The plaintiffs next contend ABOG violated §§ 1 and 2 of the Sherman Act by "collud[ing] and conspir[ing] with [the other boards] in adopting

similar approaches for retaliation against physicians based on their public statements" and "invidiously abus[ing] their examination-based monopoly in order to interfere with physicians' freedom of speech." Dkt. 66 ¶¶ 197–226. ABOG argues the plaintiffs have not sufficiently pleaded a cognizable antitrust injury or antitrust standing. Dkt. 74 at 22–28.

The court again "begins and ends with antitrust injury." Dkt. 42 (Memorandum Opinion and Order, May 16, 2023). An antitrust injury "must be established for the plaintiff to have standing under section 1 or section 2 of the Sherman Act." *Doctor's Hosp. of Jefferson, Inc. v. Se. Med. All., Inc.*, 123 F.3d 301, 305 (5th Cir. 1997). It is an "injury of the type the antitrust laws were intended to prevent and that flows from that which makes defendants' acts unlawful." *Atl. Richfield Co. v. USA Petroleum Co.*, 495 U.S. 328, 334 (1990). In other words, an antitrust injury is "the type of loss that the claimed violations . . . would be likely to cause." *Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477, 489 (1977) (omission in original) (quoting *Zenith Radio Corp. v. Hazeltine Rsch., Inc.*, 395 U.S. 100, 125 (1969)); *see, e.g.*, *Chi. Pro. Sports Ltd. P'ship v. Nat'l Basketball Ass'n*, 961 F.2d 667, 670 (7th Cir. 1992) (plaintiff must "show that its loss comes from acts that reduce output or raise prices to consumers"). Antitrust injuries are analyzed "from the perspective of the consumer" in the marketplace, so they are typically

injuries that decrease consumer choice or increase prices. *Ginzburg v. Mem'l Healthcare Sys., Inc.*, 993 F. Supp. 998, 1015–16 (S.D. Tex. 1997) (disciplinary action revoking physician-plaintiff's hospital-practice privileges was not antitrust injury because it did not "decrease consumer choice or quality of care[,] [n]or did it increase consumer prices").

The plaintiffs' alleged injury here is ABOG's "[m]isuse of monopoly power to censor speech about matters of public policy" through threats to revoke board certification. Dkt. 66 ¶ 221 (citing no authority in support). But this is not a recognized antitrust injury because it does not decrease consumer choice on where to seek medical treatment or physician choice on where to speak publicly about controversial public health topics.[3] *Ginzburg*, 993 F. Supp. at 1015; *Doctor's Hosp. of Jefferson, Inc.*, 123 F.3d at 306 (observing that the "purposes of antitrust law" are "to increase consumer

---

[3] The court acknowledges but does not adopt the novel view that censoring or suppressing speech is an antitrust injury. *See* Gregory Day, *Monopolizing Free Speech*, 88 FORDHAM L. REV. 1315, 1333, 1334 (2020) (conceding that because "ideas tend to have marginal costs of zero," "ideas and viewpoints are inherently noncommercial and thus excluded from antitrust's scope," but nonetheless advocating for the modernization of antitrust law "to account for the emerging value of commercial [but not political] information and speech in today's markets"); *see also* Hillary Greene & Dennis A. Yao, *Antitrust as Speech Control*, 60 WM. & MARY L. REV. 1215, 1222, 1241, 1266 (2019) (exploring "the application of antitrust law to settings with mixed economic and political interests" and concluding current antitrust law "arguably fails to give adequate attention to speech values").

choice, lower prices and assist competition, not competitors"); *see also Jefferson Cnty. Sch. Dist. No. R-1 v. Moody's Inv's Servs. Inc.*, 175 F.3d 848, 860 (10th Cir. 1999) ("In our view, the First Amendment does not allow antitrust claims to be predicated solely on protected speech.").

Because physicians without board certification can still legally practice medicine and voice their medical opinions, Tex. Occ. Code § 155.002, the plaintiffs have not sufficiently pleaded an antitrust injury or established antitrust standing. Their Sherman Act claims are accordingly dismissed.

* * *

For the foregoing reasons, the court dismisses the plaintiffs' claims against ABIM for lack of personal jurisdiction. ABIM's motion to dismiss, Dkt. 71, is denied as moot. The court grants ABOG's motion in part and denies it in part, Dkt. 74, and grants Noem's motion to dismiss without prejudice under 12(b)(1), Dkt. 75. The court will enter a final judgment separately.

Signed on Galveston Island this 30th day of July, 2025.

Jeff Brown

JEFFREY VINCENT BROWN
UNITED STATES DISTRICT JUDGE