Case 3:22-cv-00240   Document 100   Filed on 07/31/25 in TXSD   Page 1 of 16

United States District Court
Southern District of Texas
**ENTERED**
July 31, 2025
Nathan Ochsner, Clerk

# In the United States District Court for the Southern District of Texas

## Galveston Division

No. 3:22-cv-240

Association of American Physicians and Surgeons Educational Foundation, *et al.*, *Plaintiffs*,

v.

American Board of Internal Medicine, *et al.*, *Defendants*.

## AMENDED MEMORANDUM OPINION AND ORDER[1]

Jeffrey Vincent Brown, *United States District Judge*:

Before the court are three motions to dismiss the plaintiffs' amended complaint. Dkts. 71, 74–75. The first is a Rule 12(b)(6) motion by the American Board of Internal Medicine ("ABIM"). Dkt. 71. The second is a 12(b)(1) and (b)(6) motion by the American Board of Obstetrics & Gynecology ("ABOG"). Dkt. 74. The third motion is Department of Homeland Security Secretary Kristi Noem's, brought under Rule 12(b)(1).

---

[1] The court withdraws Dkt. 98 and replaces it with this opinion and order.

Dkt. 75. The court grants ABIM's motion, Dkt. 71, grants ABOG's motion in part and denies it in part, Dkt. 74, and grants Noem's motion, Dkt. 75.

## I. Background

Because the parties and the Fifth Circuit are familiar with the facts of this case, the court will recount them only as necessary to provide context to ruling on the defendants' post-remand motions to dismiss. The plaintiffs assert constitutional, tortious-interference, antitrust, and defamation claims. Dkt. 66 at 41–45; 49–56. Against Noem, the plaintiffs bring First Amendment and Administrative Procedure Act claims. *Id.* at 41–47.

## II. Legal Standards

### A. Rule 12(b)(1)

A court should grant a Rule 12(b)(1) motion to dismiss for lack of subject-matter jurisdiction if the court "lacks the statutory or constitutional power to adjudicate the case." *Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998). Here, "standing is challenged on the basis of the pleadings," so the court "accept[s] as true all material allegations of the complaint and construe[s] the complaint in favor of the complaining party." *Ass'n of Am. Physicians & Surgeons, Inc. v. Texas Med. Bd.*, 627 F.3d 547, 550 (5th Cir. 2010) (cleaned up).

"Under Article III of the Constitution, federal courts may adjudicate only actual, ongoing cases or controversies" and do not have "the power 'to decide questions that cannot affect the rights of litigants in the case before them.'" *Lewis v. Cont'l Bank Corp.*, 494 U.S. 472, 477 (1990) (quoting *North Carolina v. Rice*, 404 U.S. 244, 246 (1971)). "To qualify as a case fit for federal-court adjudication, 'an actual controversy must be extant at all stages of review, not merely at the time the complaint is filed.'" *Arizonans for Off. Eng. v. Arizona*, 520 U.S. 43, 67 (1997) (quoting *Preiser v. Newkirk*, 422 U.S. 395, 401 (1975)). "A case becomes moot—and therefore no longer a 'Case' or 'Controversy' for purposes of Article III—when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013) (quotation omitted).

### B. Rule 12(b)(6)

To survive a motion to dismiss for failure to state a claim, a plaintiff must plead facts sufficient to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when the pleaded facts allow the court to reasonably infer that the defendant is liable for the alleged conduct. *Id.* In reviewing the pleadings, a court accepts all

well-pleaded facts as true, "construing all reasonable inferences in the complaint in the light most favorable to the plaintiff." *White v. U.S. Corrs., L.L.C.*, 996 F.3d 302, 306–07 (5th Cir. 2021). But the court does not accept "[c]onclusory allegations, unwarranted factual inferences, or legal conclusions" as true. *Plotkin v. IP Axess Inc.*, 407 F.3d 690, 696 (5th Cir. 2005).

## III. Analysis

### A. Lack of Subject-Matter Jurisdiction

ABOG and Noem filed motions to dismiss for lack of subject-matter jurisdiction under Rule 12(b)(1). The court will address each in turn.

#### 1. ABOG

As the only board-defendant still challenging the plaintiffs' standing, ABOG asserts the plaintiffs "do not plead an injury in fact to their own interests that is traceable and redressable." Dkt. 74 at 12. It elaborates that the "speculative" threat to revoke certain physicians' board certifications simply "*could* have the indirect effect of decreasing interest in AAPS events" and conferences. *Id.* at 14. But as the Fifth Circuit already made clear, "AAPS sufficiently alleges injury-in-fact, traceability, and redressability for its First Amendment claims against the [board-defendants], meaning it has standing to pursue those claims." *Ass'n of Am. Physicians & Surgeons Educ. Found.*

*v. Am. Bd. of Internal Med.*, 103 F.4th 383, 393 (5th Cir. 2024). ABOG's 12(b)(1) motion to dismiss is denied.

### 2. Secretary Noem

The Fifth Circuit affirmed this court's dismissal of claims against prior Homeland Security Secretary Alejandro Mayorkas but modified the dismissal to be "without prejudice" on remand. *Id.* at 395–96. The plaintiffs' amended complaint, now naming Secretary Noem, contends the injuries caused by Mayorkas at the time he created the Disinformation Governance Board continues to "cause ongoing and irreparable harm to [the plaintiffs], because Mayorkas's final agency actions [were] without compliance with FACA[2] [and] cannot be adequately remedied." Dkt. 66 ¶ 48. Noem argues the plaintiffs make the same claims against her as against Mayorkas and therefore those claims remain moot. Dkt. 75 at 14–15 (concluding from a redlined comparison of the original and amended complaint that the plaintiffs allege "no new forward-looking allegations or description of ongoing harm that would suggest a different outcome.").

---

[2] The Federal Advisory Committee Act ("FACA") provides transparency and balance standards for federal advisory committees. The plaintiffs specifically argue Mayorkas did not comply with its requirement that "legislation establishing, or authorizing the establishment of any advisory committee . . . require the membership of the advisory committee to be fairly balanced in terms of the points of view represented and the functions to be performed by the advisory committee." 5 U.S.C. § 1004(b)(2).

The court agrees with Noem—the plaintiffs' amended complaint simply rehashes claims they made against the Department during the Biden Administration and alleges in a conclusory fashion that the Homeland Security Advisory Council's current political imbalance is an ongoing injury. Dkt. 66 ¶¶ 79–107, 169–184; *Ass'n of Am. Physicians & Surgeons Educ. Found.*, 103 F.4th at 395–96 (affirming that voluntary-cessation exception is not overcome). The court once again finds that AAPS's claims against the Department are moot and grants Noem's motion to dismiss without prejudice. Dkt. 75.

### B. Failure to State a Claim

ABIM and ABOG filed a motion to dismiss under Rule 12(b)(6), arguing the plaintiffs' constitutional, tortious-interference, antitrust, and defamation claims are not sufficiently pleaded. The court addresses each claim in turn.

#### 1. Constitutional Claims

##### a. First Amendment

The plaintiffs assert the board-defendants engaged in viewpoint discrimination by threatening to revoke certain physicians' board certifications for speaking critically about Covid lockdowns, mask mandates, the Covid vaccine, and abortion. Dkt. 66 ¶¶ 56, 147–168. ABIM and ABOG

argue the plaintiffs' First Amendment claim must be dismissed because their conduct is not state action. Dkt. 71 at 16–20; Dkt. 74 at 15–20. The plaintiffs counter that "board certification . . . is a public function" because it "is tantamount to state medical licensure." Dkt. 77 at 20. They also emphasize the importance board certification holds when it comes to practicing medicine. Dkt. 66 ¶¶ 76–77 (observing that most hospitals and insurance networks require board certification); *see also id.* ¶ 72 (stating the Texas Legislature has "pointed to board certification as an essential consideration in weighing the qualifications to testify as an expert"). The court finds that the plaintiffs have not sufficiently pleaded state action against ABIM and ABOG.

There is "a line between state action subject to [constitutional] scrutiny and private conduct (however exceptionable) that is not." *Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 295 (2001). The state-action requirement ensures that "constitutional standards are invoked 'when it can be said that the State is *responsible* for the specific conduct of which the plaintiff complains.'" *Id.* (quoting *Blum v. Yaretsky*, 457 U.S. 991, 1004 (1982) (alteration in original)). The Fifth Circuit recognizes three tests for determining when a state is responsible for a private entity's conduct: (1) the public-function test, whereby a private entity "may be deemed a state

actor when [it] performs a function which is traditionally the exclusive province of the state"; (2) the coercion test, which provides that a state is "responsible for a private decision only when it has exercised coercive power or has provided such significant encouragement, either overt or covert, that the choice must in law be deemed to be that of the State"; and (3) the joint-action test, which holds state action exists when "the government has so far insinuated itself into a position of interdependence with the [private actor] that it was a joint participant in the enterprise." *Bass v. Parkwood Hosp.*, 180 F.3d 234, 241–42 (5th Cir. 1999) (second alteration in original) (internal quotation marks omitted).

The plaintiffs have not sufficiently pleaded that ABIM and ABOG are state actors under these tests. Instead, the plaintiffs devote the bulk of their argument to stressing the importance of board certification in practicing medicine. Dkt. 66 ¶¶ 76–78. This is not enough to plausibly plead that ABIM and ABOG *are* state actors. Although many states undoubtedly attribute great significance to board certification,[3] that significance "does not alone

---

[3] Such significance is demonstrated through the Interstate Medical Licensure Compact, under which forty states have agreed to expedite the medical-licensure process for physicians who obtain board-certification. *See* Dkt. 66 ¶¶ 60–61; FAQS, INTERSTATE MED. LICENSURE COMPACT, https://imlcc.com/faqs/ (last visited July 31, 2025).

render [the board-defendants'] decisions state action." *Bailey v. McCann*, 550 F.2d 1016, 1019 (5th Cir. 1977) (holding private-entity licensure being a "prerequisite for a valid Florida license" does not convert the private entity into a state actor). And no matter how many doors board certification opens for physicians, such as through greater hospital-staffing access or expanded insurance-network compatibility, ABIM and ABOG still have "no power to issue the licenses which permit one to practice medicine in the State." *Id.* A state's adoption of a private board's standards "as part of a State regulatory scheme" is therefore "no more state action by that organization than is the adoption of State regulations by a wholly private organization." *Id.*; *see also Sanjuan v. Am. Bd. of Psychiatry & Neurology, Inc.*, 40 F.3d 247, 250 (7th Cir. 1994), *as amended on denial of reh'g* (Jan. 11, 1995) (holding board certification being a prerequisite for certain public positions "does not convert the Board into a state actor" and "public beliefs that [a board's certification processes] *are* reliable . . . do not bestow governmental power on the Board"); *see also Am. Bd. of Internal Med. v. Von Muller*, No. 10-CV-2680, 2011 WL 857337, at *3–5 (E.D. Pa. Mar. 10, 2011), *aff'd* (Sept. 12, 2013) (acknowledging the importance of board certification but ultimately dismissing constitutional claim because ABIM is not a state actor).

Because the plaintiffs do not sufficiently plead the state delegated, coerced, or acted interdependently with ABIM and ABOG, their First Amendment claims are dismissed.

### b. Due Process

The individual physician-plaintiffs bring Fourteenth Amendment due-process claims against ABIM for revoking their certifications. Drs. Pierre Kory and Paul Marik claim ABIM's "one-day, combined hearing . . . while the outcome was predetermined" "does not comport with due process principles." Dkt. 66 ¶¶ 227–230. This claim is dismissed because ABIM is not a state actor. *Jackson v. Metro. Edison Co.*, 419 U.S. 345, 349 (1974) ("[T]he Fourteenth Amendment offers no shield" against "private conduct, however discriminatory or wrongful" (internal quotation marks omitted)).

### 2. Tortious Interference

The plaintiffs argue that ABIM and ABOG's threats to revoke board certification tortiously interfered with speakers' participation in AAPS's medical conferences, its ability to gain donations, and its overall participation in the medical-conference marketplace. Dkt. 66 ¶¶ 109, 185–189. The board-defendants rebut that the plaintiffs fail to supply any supporting facts that would allow a tortious-interference claim to survive a

motion to dismiss. Dkt. 71 at 32; Dkt. 74 at 20–22. The court agrees with the board-defendants.

Texas law recognizes two distinct tortious-interference causes of action: "[t]ortious interference with existing business relationships and tortious interference with prospective business relationships." *McGowan & Co., Inc. v. Bogan*, 93 F. Supp. 3d 624, 654 (S.D. Tex. 2015) (internal quotation marks omitted). Because the plaintiffs do not specify which tortious-interference cause of action they plead, the court will address both.

The plaintiffs have not stated a claim for tortious interference with an existing business relationship. The elements are "(1) unlawful actions undertaken without justification or excuse; (2) with intent to harm; (3) actual damages; and (4) the actions were motivated by malice." *Id.* at 655 (quoting *Apani Sw., Inc. v. Coca-Cola Enters., Inc.*, 300 F.3d 620, 634 (5th Cir. 2002)). To the extent the plaintiffs plead this claim, they do not allege with any specificity or supporting facts what "unlawful actions" ABIM and ABOG undertook "without justification." *Apani Sw., Inc.*, 300 F.3d at 634. Although the boards' actions and threats may have been flagrant or unwarranted, it is unclear how those actions were *unlawful. See Wal-Mart Stores, Inc. v. Sturges*, 52 S.W.3d 711, 726 (Tex. 2001) (plaintiff must prove

"defendant's conduct would be actionable under a recognized tort"). The court therefore has no option but to dismiss this claim.

The court reaches the same result on the plaintiffs' claim for tortious interference with a prospective business relationship. To plead this cause of action, the plaintiffs must show:

> (1) there was a reasonable probability that the plaintiff would have entered into a business relationship with a third party; (2) the defendant either acted with a conscious desire to prevent the relationship from occurring or knew the interference was certain or substantially certain to occur as a result of the conduct; (3) the defendant's conduct was independently tortious or unlawful; (4) the interference proximately caused the plaintiff injury; and (5) the plaintiff suffered actual damage or loss as a result.

*Coinmach Corp. v. Aspenwood Apartment Corp.*, 417 S.W.3d 909, 923 (Tex. 2013). The first element of "reasonable probability" is "sufficiently alleged when the plaintiff can describe the specifics of a proposed agreement that never came to fruition." *Corrosion Prevention Techs. LLC v. Hatle*, No. 4:20-CV-2201, 2020 WL 6202690, at *4 (S.D. Tex. Oct. 22, 2020). But because the amended complaint contains no such description, the court also dismisses this claim.

### 3. Sherman Act

The plaintiffs next contend ABIM and ABOG violated §§ 1 and 2 of the Sherman Act by "collud[ing] and conspir[ing] with [the other boards] in

adopting similar approaches for retaliation against physicians based on their public statements" and "invidiously abus[ing] their examination-based monopoly in order to interfere with physicians' freedom of speech." Dkt. 66 ¶¶ 197–226. The board-defendants argue the plaintiffs have not sufficiently pleaded a cognizable antitrust injury or antitrust standing. Dkt. 71 at 21–30; Dkt. 74 at 22–28.

The court again "begins and ends with antitrust injury." Dkt. 42 (Memorandum Opinion and Order, May 16, 2023). An antitrust injury "must be established for the plaintiff to have standing under section 1 or section 2 of the Sherman Act." *Doctor's Hosp. of Jefferson, Inc. v. Se. Med. All., Inc.*, 123 F.3d 301, 305 (5th Cir. 1997). It is an "injury of the type the antitrust laws were intended to prevent and that flows from that which makes defendants' acts unlawful." *Atl. Richfield Co. v. USA Petroleum Co.*, 495 U.S. 328, 334 (1990). In other words, an antitrust injury is "the type of loss that the claimed violations . . . would be likely to cause." *Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477, 489 (1977) (omission in original) (quoting *Zenith Radio Corp. v. Hazeltine Rsch., Inc.*, 395 U.S. 100, 125 (1969)); *see, e.g.*, *Chi. Pro. Sports Ltd. P'ship v. Nat'l Basketball Ass'n*, 961 F.2d 667, 670 (7th Cir. 1992) (plaintiff must "show that its loss comes from acts that reduce output or raise prices to consumers"). Antitrust injuries are analyzed "from the

perspective of the consumer" in the marketplace, so they are typically injuries that decrease consumer choice or increase prices. *Ginzburg v. Mem'l Healthcare Sys., Inc.*, 993 F. Supp. 998, 1015–16 (S.D. Tex. 1997) (disciplinary action revoking physician-plaintiff's hospital-practice privileges was not antitrust injury because it did not "decrease consumer choice or quality of care[,] [n]or did it increase consumer prices").

The plaintiffs' alleged injury here is "[m]isuse of monopoly power to censor speech about matters of public policy" through threats to revoke board certification. Dkt. 66 ¶ 221 (citing no authority in support). But this is not a recognized antitrust injury because it does not decrease consumer choice on where to seek medical treatment or physician choice on where to speak publicly about controversial public health topics.[4] *Ginzburg*, 993 F. Supp. at 1015; *Doctor's Hosp. of Jefferson, Inc.*, 123 F.3d at 306 (observing

---

[4] The court acknowledges but does not adopt the novel view that censoring or suppressing speech is an antitrust injury. *See* Gregory Day, *Monopolizing Free Speech*, 88 FORDHAM L. REV. 1315, 1333, 1334 (2020) (conceding that because "ideas tend to have marginal costs of zero," "ideas and viewpoints are inherently noncommercial and thus excluded from antitrust's scope," but nonetheless advocating for the modernization of antitrust law "to account for the emerging value of commercial [but not political] information and speech in today's markets"); *see also* Hillary Greene & Dennis A. Yao, *Antitrust as Speech Control*, 60 WM. & MARY L. REV. 1215, 1222, 1241, 1266 (2019) (exploring "the application of antitrust law to settings with mixed economic and political interests" and concluding current antitrust law "arguably fails to give adequate attention to speech values").

Case 3:22-cv-00240 Document 100 Filed on 07/31/25 in TXSD Page 15 of 16

that the "purposes of antitrust law" are "to increase consumer choice, lower prices and assist competition, not competitors"); *see also Jefferson Cnty. Sch. Dist. No. R-1 v. Moody's Inv's Servs. Inc.*, 175 F.3d 848, 860 (10th Cir. 1999) ("In our view, the First Amendment does not allow antitrust claims to be predicated solely on protected speech.").

Because physicians without board certification can still legally practice medicine and voice their medical opinions, Tex. Occ. Code § 155.002, the plaintiffs have not sufficiently pleaded an antitrust injury or established antitrust standing. Their Sherman Act claims are accordingly dismissed.

### 4. Defamation

Drs. Kory and Marik also assert ABIM defamed them by posting their board-certification revocation on the ABIM website and sharing that information with certain news publications. Dkt. 66 ¶¶ 234–39. But as ABIM correctly points out, the plaintiffs' amended complaint neglects to provide in a non-conclusory fashion the "specific allegedly false and defamatory statements" ABIM said or wrote.[5] Dkt. 71 at 33; *Hendershott v. Ostuw*, No. 9:20-CV-80006, 2020 WL 13111216, at *4 (S.D. Fla. Oct. 14, 2020), *aff'd*, No.

---

[5] The court applies the defamation laws of Florida and Virginia under Texas' choice-of-law rules because Drs. Kory and Marik are domiciled in those states. Dkt. 66 ¶¶ 13, 15. *Levine v. CMP Publ'ns, Inc.*, 738 F.2d 660, 667 (5th Cir. 1984) (quoting Restatement (Second) of Conflicts, § 150(2) (1971) (updated 2024)).

15/16

20-13991, 2022 WL 2904080 (11th Cir. July 22, 2022); *McGuire v. IBM Corp.*, No. 1:11CV528 LMB/TCB, 2011 WL 4007682, at *5 (E.D. Va. Sept. 8, 2011) ("McGuire neither quotes nor even paraphrases these alleged defamatory statements."). The court therefore dismisses Drs. Kory and Marik's defamation claims.

*       *       *

For the foregoing reasons, the court dismisses with prejudice the plaintiffs' claims against ABIM and ABOG. Dkts. 71, 74. The court also grants Noem's motion to dismiss without prejudice under Rule 12(b)(1). Dkt. 75. The court will enter a final judgment separately.

Signed on Galveston Island this 31st day of July, 2025.

_____
JEFFREY VINCENT BROWN
UNITED STATES DISTRICT JUDGE